MONROE, Judge.
S.R., the father, petitioned the trial court for custody of his son. He had been given temporary custody of the child after an ex parte hearing in which he alleged that the son had been abused. S.R., the mother, petitioned the trial court asking, among other things, that the father be held in contempt for failure to pay half of the child’s medical bills, which were not covered by medical insurance.
After a hearing, the trial court denied the father’s petition and left the child in the mother’s custody. The court also ordered the father to pay $286 toward the child’s medical expenses, but it did not hold the father in contempt. The father appeals.
The evidence adduced at trial tended to show the following. While the son was visiting the father in Autauga County one weekend, he showed the father scars on his buttocks. The son explained to the father that the mother had sat on him and whipped him with an electrical cord about two weeks earlier. The son said that the incident had caused him to bleed, and that it had hurt him so badly he could not sit down. The father took pictures of the marks on the son and took him to a hospital emergency room. The father also telephoned a protective service worker for the Autauga County Department of Human Resources, who talked with the child at the hospital.
The DHR worker, Wanda Wallace, testified that she saw scars on the boy’s buttocks and lower leg. Wallace said she talked with the child, and that he told her he had been whipped with an electrical cord. She said the marks were consistent with marks resulting from abuse, and she determined that an abuse report needed to be made. However, because the incident allegedly occurred in Montgomery County, the City of Montgomery Police Department was notified and a social worker from Montgomery County took over the case.
Nancy Gilford, with the Montgomery County DHR, testified that the police report showed that the scars on the child’s buttocks were not fresh, and she said she therefore could not investigate any alleged incident. She filed a report showing that abuse was “not indicated.” However, in making this determination, Gilford said, she did not talk with the mother, the father, or the child, and she had not seen the marks on the child.
The mother admitted to hitting the child with an electrical cord, saying she used the cord because the child could not find the belt *735 with which she usually hit him. She said that the child had attention deficit disorder and was uncontrollable. She had taken the child to nine doctors after she and the father had divorced, apparently seeking treatment for ADD. The child was taking Ritalin, a drug frequently prescribed for children with ADD. The mother testified that she spanked the child if he did not take his Ritalin.
On the other hand, the father testified that the child did not have a behavioral problem and that when the child did misbehave he could be disciplined by taking away a favorite toy or activity for a time. The father said he did not believe the child needed to be taking Ritalin and that he did not make the child take it while the child was with him. A neighbor of the father’s, who had looked after the child when the father was at work, also testified that she had not had disciplinary problems with the child.
The child was enrolled in a Montgomery County school when he lived with his mother. The mother said she believed the child needed special attention. The record is unclear as to who instigated a review of the child’s abilities, but a committee overseeing the school’s special education program reviewed his records. The mother said that the committee determined that the child had above average intelligence and that he was “carrying his own.”
The child, who was nine years old at the time of the hearing, told the trial court that he wanted to live with the father. He related to the court the incident in which his mother whipped him with the electrical cord. He also said that his mother’s boyfriend had hit him with the cord to hair clippers. He also described for the court how his mother would pop him in the mouth or slap him in the face. The child told the court that the mother cursed him, called him names, and threatened to hurt or kill him, telling him he needed to “call 911” because she was going to “whup” him. The mother denied calling the child names, but she acknowledged that she gave him frequent spankings.
The father contends that the trial court abused its discretion in denying his request for a change of custody. In seeking a change of custody, the burden is upon the petitioner to show that the change “will materially promote the child’s best interests and that the benefits of the requested change will more than offset the inherently disruptive effect caused by uprooting the child.” Jones v. Sprinkle, 621 So.2d 1341, 1342 (Ala.Civ. App.1993), citing Ex parte McLendon, 455 So.2d 863 (Ala.1984).
Custody decisions based on ore ten-us evidence will not be reversed except for abuse of discretion or in cases in which the judgment is unsupported by the evidence and is plainly and palpably wrong. Id. Further, when evidence is presented ore tenus, the trial court’s ruling regarding custody is presumed to be correct. Bosarge v. Bosarge, 628 So.2d 709, 710 (Ala.Civ.App.1993).
“When evidence in a child custody case has been presented ore tenus to the trial court, that court’s findings of fact based on that evidence are presumed to be correct. The trial court is in the best position to make a custody determination — it hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing. See Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994), wherein this Court, quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993), set out the well-established rule:
“ ‘ “Our standard of review is very limited in cases where the evidence is presented ore tenus. A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court’s discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow. [Citations omitted.].” ’ ”
Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996).
Although the child’s preference is not controlling, it is an important factor for the trial court to consider in a custody modifica *736 tion case. Pullum v. Webb, 669 So.2d 925 (Ala.Civ.App.1995); McKeever v. McKeever, 528 So.2d 856 (Ala.Civ.App.1988).
The trial court found that the mother had acted inappropriately in whipping the child with the electrical cord. It went on to find that the poor relationship between the mother and the father had affected their ability to cooperate in rearing their son and determining what is best for him. The trial court then held that the father had failed to show that a change of custody would materially promote the best interests of the child.
The undisputed evidence is that the child is subjected to frequent spankings, at least some of which are, at the very least, “inappropriate.” The mother seems to believe that the child has some type of behavioral problem. She has taken him to nine doctors seeking treatment for ADD. She believes the child needs special attention at school, although school authorities have determined that he does not. The protective service worker who actually talked to the child was concerned enough about the child’s situation that she believed an abuse report should be filed. Additionally, the child has expressed a desire to live with his father.
The evidence does not support the trial court’s conclusion that a change in custody would not materially promote the child’s best interests. The mother’s actions toward the child are, at a minimum, inappropriate, and they could be said to border on abuse of the child. Removing the child from her home would certainly materially promote the best interests of the child and would more than offset the disruptive effects caused by the change of custody; therefore, the trial court abused its discretion in denying the father’s request for a custody modification.
The father also contends that the trial court erred in ordering him to pay a portion of the child’s medical bills because, he says, the mother did not present receipts tending to prove that the bills were incurred for the child. The father has not complied with the requirements of Rule 28(a), Ala. R.App. P., in that he cites no authority in support of his argument. “A pro se litigant must comply with legal procedures and court rules.” Jones v. Seibert, 624 So.2d 639, 640 (Ala.Civ. App.1993). Courts are no more forgiving to pro se litigants than to those represented by counsel. Id. When an appellant fails to comply with Rule 28(a)(5), this court will affirm the judgment of the trial court. Harris v. Harris, 528 So.2d 866 (Ala.Civ.App.1988). Therefore, that portion of the judgment ordering the father to pay part of the child’s medical bills is affirmed.
That portion of the judgment denying the custody modification is reversed. That portion of the judgment ordering the father to pay $286 toward the child’s medical bills is affirmed. The cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ROBERTSON, P.J., and YATES and THOMPSON, JJ., concur.
CRAWLEY, J., concurs in part and dissents in part.