Lisa Dianne Dean ("the mother") appeals from a judgment of the Mobile Circuit Court granting a custody-modification petition filed by Donald Gordon Dean ("the father") and awarding him sole physical custody of the parties' child, Deana Mine Dean ("the child").
The mother and the father were divorced in November 1998; although the divorce judgment awarded the father and the mother joint legal custody of the child, the mother was awarded sole physical custody of the child. In addition, that judgment ordered the father to pay child support to the mother and to provide health-insurance coverage for the child. The father subsequently married another woman, Teresa Ann Hart.
In January 2003, the mother enrolled in a medical-assistant program at a college to improve her job opportunities.[1] The mother *Page 1062 
testified that the time demands of her school curriculum and her work schedule had prevented her from adequately caring for the child at that time. As a result, in January 2003, the mother and the father entered into an informal agreement in which the father consented to care for the child while the mother completed the medical-assistant program. The parties agreed that, after the mother completed that program, the father would return the child to the mother. While the father was caring for the child, the mother exercised visitation with the child every other weekend and occasionally on Wednesdays.
The father did not withdraw the child from her then-current school during the academic year that he began caring for the child; however, he did enroll her in a school located in the district of his residence during the following academic year. While in the father's care, the child was placed on the A/B honor roll every semester. The father testified that he had been very active in the child's academic and extracurricular activities. The mother admitted, however, that she had been unable to participate in any of the child's school activities during the three and a half years preceding the trial. The child testified that she would rather live with the father instead of the mother because, she said, the father spends more time with her.
During the proceedings, the father and Hart were divorced, and the father and the child moved into the home of the child's paternal grandfather. Shortly before trial, however, the paternal grandfather became ill, and the father and the child moved from the paternal grandfather's home to a home of their own. The father's employment schedule required him to leave for work before the child left for school and to return home after school hours. The child's paternal grandmother, however, transported the child to school in the mornings, picked up the child after school, and cared for the child until the father returned home.
There was conflicting evidence as to whether the mother sought the child's return to her home after the mother had graduated from the medical-assistant program in July 2004. The father claimed that the mother had not requested the return of the child until he asked her to relinquish custody of the child to him in September 2005, almost a year and a half after she had completed the program. The mother, on the other hand, testified that, shortly after she graduated, she had repeatedly requested that the father return the child to her, but that the father had refused. The mother stated that she had made several attempts to secure the child's return but that she had been unable to afford an attorney and that the father had intimidated her to the point that she was unable to seek the assistance of an attorney. Notwithstanding her fear of the father, the mother continued to exercise visitation with the child every other weekend and on Wednesdays. The mother did eventually seek the assistance of an attorney; on October 5, 2005, she removed the child from her school. On October 12, 2005, the father filed an instanter motion for pendente lite custody, a motion seeking to require the parties undergo drug testing, and a petition to modify custody.
On October 26, 2005, the trial court held an ex parte hearing on the father's request for pendente lite custody. The trial court awarded the father pendente lite custody *Page 1063 
of the child pending service of his pleadings upon the mother. On October 31, 2005, service was perfected on the mother. The mother filed an answer, denying a majority of the allegations, and a counterclaim, alleging that the father had obstructed her attempts to regain custody of the child.
After a hearing on December 12, 2005, regarding the father's request for pendente lite custody of the child, the parties reached an agreement under which the father would retain pendente lite custody of the child, the mother would exercise visitation, and both parties would submit to hair-follicle testing. The trial court then entered an order reflecting that agreement. The mother, however, refused to undergo the hair-follicle test until the court granted the father's motion to compel approximately eight and a half months later.
The case proceeded to trial on December 4, 2006; the following evidence was adduced at trial. During the mother's career she had worked in several different occupations, and the evidence was contradictory as to whether she had been discharged or had resigned from those jobs. The mother testified that she had been employed at an office-equipment company and had voluntarily resigned from that position to pursue the medical-assistant program. The mother denied that she had been discharged from that position. However, the mother's testimony was impeached by documentary evidence indicating that she had, in fact, been discharged by the office-equipment company because of poor performance and poor attendance. The mother then gained employment at a medical-management company. The mother admitted, however, that she had been discharged from that employment because she had tested positive for a controlled substance for which she had not had a recent prescription. The mother then obtained employment at a real-estate company, but, she stated, she had resigned because she was no longer able to cope with her personal issues and adequately perform her job. At the time of trial, the mother had been steadily employed for approximately six months at her current job.
Moreover, evidence adduced at trial indicated that the mother may have had a substance-abuse problem. The father's sister testified that she had seen the mother at the child's soccer game in October 2004 and that the mother had acted as if she was under the influence of drugs. The father, similarly testified that, on several occasions at the child's sporting events and when he had picked the child up from the mother on the weekends, he had witnessed the mother acting as if she was under the influence of a controlled substance.
Following the parties' divorce, the mother had married another man. The mother, the mother's new husband, and her 15-year-old daughter (a child from a previous relationship with another man) lived in a two-bedroom apartment. The mother testified that, if she were awarded custody, the child would share a room with her teenage half sister and that the half sister would care for the child after school until the mother returned home from work. The half sister, however, had not been in the mother's care between the ages of 8 and 13, had been diagnosed with attention deficit/hyperactivity disorder, and had failed the sixth grade.
After the ore tenus hearing on the merits, the trial court recognized in its judgment that the mother had filed a counterclaim and had orally sought a finding of contempt; that court's judgment "granted" the father's petition to modify custody without expressly adjudicating the mother's *Page 1064 
oral motion to hold the father in contempt for failing to pay child support.[2]
The trial court's judgment cited no case law, but the father's petition had specifically alleged that "the good brought about by modifying custody of said minor far outweighs any disruptive effects, in fact returning the child to her familiar home-place. Further, modification of custody will materially promote the best interest of said minor child." The trial court awarded sole physical custody of the child to the father, awarded the mother visitation, and ordered the mother to pay child support. The mother filed a postjudgment motion to alter, amend, or vacate the judgment or, in the alternative, for a new trial. After a hearing on the motion, the trial court denied her motion, and the mother timely appealed to this court.
On appeal, the mother contends that the trial court exceeded its discretion in transferring custody of the child to the father because, she says, the father failed to satisfy the standard set out in Ex parte McLendon, 455 So.2d 863 (Ala. 1984).
We note that our standard of review is highly deferential:
 "`When evidence in a child custody case has been presented ore tenus to the trial court, that court's findings of fact based on that evidence are presumed to be correct. The trial court is in the best position to make a custody determination — it hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing. See Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994), wherein this Court, quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App. 1993), set out the well-established rule:
 "`"`Our standard of review is very limited in cases where the evidence is presented ore tenus. A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, Payne v. Payne, 550 So.2d 440 (Ala.Civ.App. 1989), and Vail v. Vail, 532 So.2d 639 (Ala.Civ.App. 1988), and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court's discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow. Gamble v. Gamble, 562 So.2d 1343
(Ala.Civ.App. 1990); Flowers v. Flowers, 479 So.2d 1257 (Ala.Civ.App. 1985).'" . . .
 "`. . . .
 "`Neither the Court of Civil Appeals nor this Court is allowed to reweigh the evidence in this case. This case, like all disputed custody cases, turns on the trial court's perception of the evidence. The trial court is in the better position to evaluate the credibility of the witnesses . . . and the trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue, of custody.'"
Ex parte Patronas, 693 So.2d 473, 474-75 (Ala. 1997) (quoting Ex parte Bryowsky, 676 So.2d 1322, 1324-26
(Ala. 1996)); see also Smith v. Smith, 887 So.2d 257,262 (Ala.Civ.App. 2003). Moreover, matters of child custody lie within the sound discretion of the trial court. See Martinv. Martin, 623 So.2d 1167 (Ala.Civ.App. 1993).
In situations in which the parents have joint legal custody, but a previous *Page 1065 
judicial determination has granted primary physical custody to one parent, the other parent, in order to obtain a change in custody, must meet the burden set out in Ex parteMcLendon, supra. See Scholl v. Parsons,655 So.2d 1060, 1062 (Ala.Civ.App. 1995). The burden set out in McLendon requires the parent seeking a custody change to demonstrate that a material change in circumstances has occurred since the previous judgment, that the child's best interests will be materially promoted by a change of custody, and that the benefits of the change will more than offset the inherently disruptive effect resulting from the change in custody. Exparte McLendon, 455 So.2d at 866.
When, as here, the trial court enters a judgment following an ore tenus proceeding, but does not make any express findings of fact, this court indulges the requisite presumptions that the trial court made those findings necessary to support its judgment and that those findings are correct. See Ex parteFann, 810 So.2d 631, 636 (Ala. 2001). Additionally, we note that the preference of a child whose custody is at issue "is an important factor for the trial court to consider in a custody modification case," although that preference is not controlling.S.R. v. S.R., 716 So.2d 733, 735-36 (Ala.Civ.App. 1998).
In this case, the trial court could have reasonably concluded that the father presented sufficient evidence to support his contentions that awarding him custody would materially promote the child's best interests and would outweigh any disruptive effect so as to satisfy the standard set out in Ex parteMcLendon. The evidence indicated that the mother had been unable to simultaneously care for the child and finish the medical-assistant program; thus, she entered into an informal agreement under which the father consented to care for the child until she received her degree. The mother testified that she did not request that the father return the child to her until she had completed the program; however, evidence indicated that that request was made almost a year and a half after she had completed the program, and only after the father had presented the mother with a proposed agreement to modify the child's custody.
Moreover, the mother admitted that, during the time that the father had cared for the child, she had not attended any of the child's school functions. Evidence indicated that the mother had trouble maintaining steady employment and that on at least one occasion her employment had been terminated because she had tested positive for the use of a controlled substance for which she was unable to provide a recent prescription. In addition, witnesses testified that the mother had publicly appeared to be under the influence of a controlled substance. The mother was ordered by the trial court to take a hair-follicle test to detect the presence of illicit drugs; however, the mother refused to take the test until a motion to compel had been granted by the court almost eight and a half months after she was ordered to undergo the procedure.
The evidence further revealed that the mother lived in a two-bedroom apartment with her new husband and the child's half sister, as to whom the mother had regained custody two years before trial. Although the half sister had numerous academic and developmental problems and had failed a grade, the mother testified that the child would share a room with the half sister and that the half sister would care for the child while the mother was at work. Moreover, the trial court could have inferred that the mother had testified untruthfully that she had resigned from a previous job instead of being discharged from that employment. *Page 1066 
In contrast, the father had been steadily gainfully employed, and the child's paternal grandmother had assumed the responsibility of taking care of the child while the father was at work. The father had rarely missed any of the child's school functions and extracurricular activities, and the child had consistently been placed on the A/B honor roll while in his care. The child testified that she preferred to live with the father over the mother because, she said, the father spent more time with her.
Based on the evidence, the trial court could have reasonably concluded that the father had demonstrated that a material change in circumstances had occurred, that the child's best interests would be materially promoted by a change in physical custody, and that the benefits of the change — which were arguably not disruptive because the child had lived with the father and had developed established roots with the father and his family, his community, and her school — would more than offset any adverse effects resulting from the change.Ex parte McLendon, 455 So.2d at 866. In addition, although not conclusive, the child had requested to live with the father.
Because the trial court in this case did not make findings of fact in its judgment entered after the ore tenus proceeding, this court indulges the requisite presumptions that the trial court made those findings necessary to support its judgment, and that those findings are correct. Ex parte Farm,810 So.2d at 633. Therefore, we cannot conclude that the trial court exceeded its discretion in modifying custody.
The mother also contends that the trial court's judgment should be reversed because, she says, the trial court did not specifically state in its judgment that it applied the proper standard set out in Ex parte McLendon. Our cases indicate that this court looks not only to thejudgment, but also to the record, in ascertaining whether the trial court applied the proper standard. See, e.g., Turner v. Denney, 899 So.2d 1016,1017 (Ala.Civ.App. 2004) (reversing modification judgment because of inability to determine from the record whether proper custody standard was applied: "[t]he judgment entered by the trial court and the record are silent in that respect" (emphasis added)). Although the trial court's judgment is silent concerning the substantive standard applied in this case, the record is not. The father's petition to modify custody specifically asserted that conditions warranted a change in custody under the standard set forth in Ex parteMcLendon. In the father's petition to modify custody, he stated "the good brought about by modifying custody of said minor far outweighs any disruptive effects, in fact returning the child to her familiar home-place. Further, modification of custody will materially promote the best interest of said minor child." Although the trial court did not cite any caselaw tending to indicate which custody standard it had applied, the judgment clearly "granted" the father's petition to modify custody; that petition set out the Ex parte McLendon
standard. Considering both the judgment and the record, it can be ascertained that the trial court applied the standard set forth in Ex parte McLendon. "This court will not presume error on the part of the trial court." Pickett v.Pickett, 792 So.2d 1124, 1128 (Ala.Civ.App. 2001).
AFFIRMED.
BRYAN, THOMAS, and MOORE, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.
[1] At that time, the father owed approximately $5,000 in unpaid child support to the mother and had not consistently maintained health-insurance coverage for the child. The mother never filed a petition seeking a finding of contempt, but she made an oral motion during trial to hold the father in contempt for the unpaid child support. Rule 70A(c)(1), Ala. R. Civ. P., provides: "A proceeding based on constructive contempt . . .shall be subject to the rules of civil procedure.The proceeding shall be initiated by the filing of apetition seeking a finding of contempt. . . . The petition shall provide the alleged contemnor with notice of the essential facts constituting the alleged contemptuous conduct." (Emphasis added.) The trial court declined to hold the father in contempt. Under these circumstances, if the trial court had held the father in contempt, it would have allowed the mother to circumvent the provisions of Rule 70A(c)(1), particularly the notice requirement.
[2] See note 1, supra. *Page 1067