On Rehearing Ex Mero Motu

MOORE, Judge.
This court’s opinion of September 7, 2012, is withdrawn, and the following is substituted therefor.
Jason Michael Snoyman (“the father”) appeals from a custody-modification judgment of the Dale Circuit Court (“the trial court”) awarding Katrina Moore Snoyman (“the mother”) custody of the parties’ oldest child, A.S. We reverse.

Procedural History

The parties were divorced by a judgment entered by the trial court on November 8, 2007. Pursuant to that judgment, the father was awarded custody of the parties’ four children. On August 15, 2011, the mother filed a petition seeking a modification of the custody of the children. The mother asserted that the father was unable to be physically present in the home with the children due to his military duty. Specifically, she stated that the father had told her she could have custody of the children from July 16, 2011, through the end of the 2011-2012 school year based on his deployment orders. The mother further asserted that the children had indicated that their father and his fiancé had physically mistreated the children and that the fiancé had employed corporal punishment against the children in violation of the trial court’s previous order. She also asserted that the father had hit the parties’ oldest child, A.S., across the face on at least two occasions. The mother requested sole custody of the parties’ children and an award of child support.
Also on August 15, 2011, the mother filed a motion for temporary custody of the parties’ children, asserting that the father had informed the mother that he was being deployed and that she would have the children from July 16, 2011, until the end of the school year and that the Enterprise school system would not allow her to enroll the children without a custody order from the trial court. The mother also asserted that the children had informed her that they were being physically abused by the father and his fiancé.
On August 19, 2011, the mother filed a renewed motion for emergency ex parte temporary custody, asserting that there was an ongoing investigation by the Coffee County Department of Human Resources regarding an incident in which the father had allegedly physically abused A.S. The father filed a response to the mother’s motion on August 26, 2011, denying the allegations therein. On August 31, 2011, the trial court entered an order denying the mother’s motion for emergency temporary custody and setting her petition for a custody modification for a hearing on November 28, 2011.
On September 19, 2011, the mother filed a motion to change venue from Dale County to Coffee County; the trial court denied that motion on September 27, 2011. Following ore tenus proceedings, the trial court entered a judgment on December 16, 2011, that stated, in pertinent part:
“This cause is before the court on the mother’s Petition to Modify the divorce decree entered in this case on November 8, 2007. In that order the father was awarded custody of the parties’ minor children. Thereafter the mother petitioned to modify the order of custody in the divorce decree and after a trial the mother’s request to modify the children’s custody was denied. However, several provisions of the order regarding *516 visitation were modified including allowing the mother specific telephonic visitation.
“The first issue to be addressed in this case is the proper standard of proof to be applied. It has been held that in order to change custody after an initial custody determination has been made there must be a showing that there has been a material change in circumstances; that the good of the proposed change will offset the disruptive effect of uprooting the child and that the proposed change in custody will materially promote the minor child’s best interests. Ex Parte McLendon, 455 So.2d 863 (Ala.1984); Cupp v. Cupp, 976 So.2d 1010 (Ala.Civ.App.2007); Adams v. Adams, 21 So.3d 1247 (Ala.Civ.App.2009).
“The mother contends that there has been a material change in circumstances as evidenced by the father’s act of domestic violence against the parties’ oldest child, [A.S.]. The mother argues that in light of the domestic violence that the proposed change in custody will more than offset the disruptive effect of uprooting the children and the change will materially promote the children’s best interests. The mother further contends that the father has intentionally thwarted her efforts to have telephonic visitation with the children which is further evidence of the need to change custody.
“The father admits that he slapped the oldest child on the cheek but contends it was a one time event that will not be repeated and that it was in an effort to calm her down at a time that she was being defiant by yelling at him and she was also being very disrespectful. He contends it was in the nature of necessary discipline rather than abuse or domestic violence. The father denies that he is intentionally denying the mother access to the children by telephone. It is the father’s contention that the children are extremely busy with their school work and extracurricular activities and that they are unable to speak with their mother when she calls.
“In regard to the mother’s claim that the father has committed an act of domestic violence, it is the law of this state that if the trial court determines that domestic violence has occurred that a rebuttable presumption arises that custody should not be awarded to the perpetrator of such violence. Section 30-3-131, Code of Alabama [1975]. The incident between the father and daughter clearly rises to the level of domestic violence. Therefore the issue before the court is whether the father’s explanation of the reasons for the incident between he and the oldest daughter rebuts the presumption that he should not have custody of her or her siblings. After considering the evidence presented on that issue the court finds that the incident was a one time event that hopefully will not be repeated and was in response to certain actions by the child. Even though the court considers the father’s actions to be domestic violence the court believes that under the circumstances the presumption that he should not be allowed custody has been rebutted.
“The next issue before the court is in regard to the oldest child’s custodial preference. The court notes that the child’s custodial preference is a factor that should be considered by the court even though that preference is not controlling. Nauditt v. Haddock, 882 So.2d 364 (Ala.Civ.App.2003). It has further been stated that in considering the child’s preference the court should also consider the child’s age, maturity, and reasons for the custodial preference. Toler v. Toler, 947 So.2d 416 (Ala.Civ.App.2006); Family Law in Alabama, *517 4th Edition (2009). Therefore in light of the aforestated caselaw language the court must consider the oldest child’s level of maturity and the reasons for her custodial preference. The court finds that the child has a reasonable level of maturity for a twelve year old but the court is concerned about the reasons for her stated preference. There was testimony presented that the mother was not as strict in her discipline and rules as the father and that the children were allowed more freedom in their mother’s home including being allowed to stay up late at night.
“Another factor to be considered is the consistent finding by the appellate courts that siblings should not be separated without a compelling reason. Dunn v. Dunn, 972 So.2d 810 (Ala.Civ.App.2007). Therefore the issue to be determined is whether there is a compelling reason to separate these siblings. After considering the evidence presented, the court finds that the domestic violence incident between the father and oldest daughter rises to the level of a compelling reason to separate these siblings.
“In summary, the court finds that the mother has met her burden of proof by showing that a material change in circumstances has occurred in this case. The court finds further as to the child, [A.S.], that the positive good of residing with her mother outweighs any disruptive effect of the change and that the proposed change will materially promote the child’s best interests. The court finds further that there is a compelling reason to allow her to reside with her mother and to continue the other children in their father’s custody.
“Therefore in regard to the children, [K.S.], [R.S.,] and [N.S.,] the court finds that the mother has failed to show a material change in circumstances or that the change would offset the disruptive effect or that the change would materially promote the children’s best interests.”
The trial court then granted the mother’s modification petition as to A.S. and awarded the mother custody of A.S., but it denied the petition as to the parties’ other children, K.S., R.S., and N.S. The trial court awarded each parent visitation and telephone visitation with the child or children not in his or her custody and denied all other requests.
The father filed a postjudgment motion on December 28, 2011. On that same date, the father filed a motion for an immediate stay of enforcement of the trial court’s judgment; the trial court entered an order on January 13, 2012, determining that the custodial exchange of A.S. had already taken place and, thus, that the father’s motion for a stay was moot. The mother filed a motion to amend the trial court’s judgment on January 5, 2011, requesting that the trial court rule on her request for child support. On January 27, 2012, the trial court entered an order denying the father’s postjudgment motion. On February 3, 2012, the trial court entered an order stating that it was deviating from the Rule 32, Ala. R. Jud. Admin., child-support guidelines and declining to award the mother child support. The father filed his notice of appeal to this court on March 6, 2012.

Facts

The parties were divorced on November 8, 2007. The father testified that he is a pilot in the United States military and that he is stationed in North Carolina. According to the father, because he had been scheduled to deploy just before he took the parties’ children to visit the mother during the summer of 2011, he had made plans to allow the children to stay with the mother for the 2011-2012 school year. The father *518 testified, however, that he had injured himself and was unable to deploy with his unit as planned, that he had notified the mother that he was not deploying, and that he had picked the children up from their summer visitation with the mother on August 20, 2011.
The mother testified that she lives in Enterprise with her new husband in a three-bedroom house that they rent. Although the mother testified that she is employed, she testified that, at the time of the hearing, she was on unpaid medical leave and was not receiving any income.
The mother testified that, during her summer visitation with the children, they had told her “very disturbing stuff.” The mother testified that the children had described an incident to her in which the father had backhanded A.S., who was 12 years old at the time of the hearing, twice in the face and that, during that same incident, he had held his hand over A.S.’s mouth and pinned her against the wall in the air. The mother testified that, in response to the children’s telling her about that incident, she had contacted a social worker and had taken the children to the police department. She stated that she had also filed an action in which she had sought a protection-from-abuse order on behalf of the children but that that action had been dismissed. The mother testified that she had also contacted the Family Advocacy Program on the father’s military base and had informed them of what the children had described to her. The mother also testified that the children had told her that the father had hit the parties’ son, K.S., with a spiked belt and left bruises on his thighs and buttocks, that the father had thrown A.S. into walls and onto the ground, and that the father had withheld food from A.S. or given her very little food because he was angry with her.
According to the mother, the father had denied her telephonic contact with the children, which had previously been ordered by the trial court. She also testified that she had not seen the children since the father had picked them up from their summer visitation with her on August 20, 2011.
The father testified that, at the time of the hearing, he was engaged but that his fiancé had not been residing with him and the children since March or April 2011 because she was attending college in Texas. The father testified that neither he nor his fiancé had physically mistreated the children. With regard to the incident involving A.S. described by the mother, the father testified that A.S. had been “mouthing off’ to him while she was supposed to be cleaning her room, that he had warned her, and that he felt he needed to give her a quick little slap across the mouth to “hush her up.” He stated that he had not intended to injure A.S., and that he had not pinned her against the wall, but that he had lightly covered her mouth for three to five seconds to stop her from talking. The father testified that he did not typically employ physical punishment with the children but that he had spanked them before; he also stated that it had been a long time since he had had to go that far in disciplining them. The father testified that the incident with A.S. had been raised in the parties’ previous court hearing in 2010 and that he had not physically disciplined the children since the last court hearing. According to the father, he has since employed discipline like “time outs” and grounding when the children misbehave.
The father testified that he had been contacted and interviewed by a number of agencies regarding the mother’s allegations of abuse. He testified that the investigation by the Cumberland County Social Services Department in North Carolina *519 had been concluded and that no -wrongdoing on his part had been found. He stated that he had not allowed the mother to speak with the children since August 2011 for the children’s emotional stability based on guidance he had received from the Cumberland County Social Services Department.
The father testified that every time the children return from visiting the mother, their behavior is erratic and it takes them a few weeks to return to a normal routine. According to the father, A.S. was experiencing the physical and emotional changes of adolescence, but she had not been “shy” in talking to the father about these changes, and he had tried to make her comfortable.
The children testified in camera. A.S. testified that the father’s fiance no longer lived in the father’s house and had been gone for approximately a year. A.S. testified that the father had struck her in the face a couple of months before school had let out. She stated that he had slapped her face, that she was up against the wall, and that he had covered her mouth, but that he had not lifted her off the ground. According to A.S., the father was just trying to discipline her and she was being loud. She stated that, when the father slapped her face, she tried to step away and his fingernail caught her face, leaving a bruise. She testified that that incident had happened “like, a year ago” and that, since then, she and her siblings just get grounded and that that seems to work more effectively. A.S. stated that the father had never hit her like that or treated her like that on any other occasion and that she had never seen the father strike the other children like he had struck her on the face.
A.S. testified that the father does not answer the mother’s telephone calls anymore. She stated that she was happy living at the father’s house, but, she said, she thought that she was happier at the mother’s house. A.S. stated that she was sure the mother and the father each love her just as much as the other but that she thinks the mother shows it a lot more. A.S. testified that she loves both of her parents. She stated that she felt like there would be more freedom at the mother’s house and that summer visitation with the mother had been fun. A.S. testified that, if she were separated from her siblings, she would miss them. She also testified that she would be happiest living with the mother, even if it meant being separated from her siblings, so long as she was able to talk to her siblings every night. She testified that she would prefer not to be separated from her siblings but that it might be better so long as they could contact each other at least once a day.
K.S. testified that he would prefer to continue living with the father because the father’s house is “better” than the mother’s house; he stated that the father’s house is nicer and bigger and that the children get “kind of better food” and “better health” at the father’s house. K.S. stated that he had a lot of friends in North Carolina and that he is comfortable there. He testified that he does not get in trouble much but that, when he does, he has to sit on his bed for a “time out.” K.S. also stated that he had not gotten into trouble while he was visiting the mother during their summer visitation. He testified that he and his brother, N.S., have a bunk bed at the mother’s house and that he is “squooshed” when he stays there. K.S. stated that there are bugs at the mother’s house and that he does not like the mother’s house; he also stated, however, that there is nothing about staying with the mother that makes him uncomfortable. He testified further that he did not know if he would want to continue living with the *520 father if it meant being separated from one or more of his siblings.
R.S., the parties’ daughter who was eight years old at the time of the hearing, testified that she likes living with the father and that the father’s house is bigger than the mother’s house. She testified that, if she gets into trouble at the father’s house, the father grounds her or puts her in “time out.” She stated that the father used to spank them but that he has “pretty much” stopped and that the children get grounded instead. R.S. testified that she did not know where she would prefer to live, that it is a lot of fun at both houses, and that she would be comfortable living with the mother or the father. N.S., the parties’ six-year-old son, testified that the mother had been kind of mean when they had visited her during the summer but that he had liked the toys that were at her house. He testified that he does not like the mother’s husband and that the mother and her husband had called him “Bubba” and he does not like being called that. He testified that he would rather live with the mother because she has fun toys and video games and because she allows the children to stay up really late and the father does not.
It was undisputed that each child was doing very well in school and that they were involved in extracurricular activities.

Standard of Review

This court outlined the applicable standard of review in C.L.B. v. D.L.O., 61 So.3d 325, 328 (Ala.Civ.App.2010):
“The standard of appellate review of a child-custody judgment based on ore tenus evidence is deferential.
“ ‘ “When evidence in a child-custody case has been presented ore tenus to the trial court, that court’s findings of fact based on that evidence are presumed to be correct. The trial court is in the best position to make a custody determination — it hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing.” ’
“Burgett v. Burgett, 995 So.2d 907, 912 (Ala.Civ.App.2008) (quoting Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996)). An appellate court will not reverse a trial court’s judgment as to custody in such a case unless the evidence fails to support the trial court’s custody determination so that the appellate court must conclude that that determination is ‘ “plainly and palpably wrong.” ’ Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994) (quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993)).
“ ‘ “[E]ven under the ore tenus rule, ‘[wjhere the conclusion of the trial court is so opposed to the weight of the evidence that the variable factor of witness demeanor could not reasonably substantiate it, then the conclusion is clearly erroneous and must be reversed.’ ” B.J.N. v. P.D., 742 So.2d 1270, 1274 (Ala.Civ.App.1999) (quoting Jacoby v. Bell, 370 So.2d 278, 280 (Ala.1979)).’
“Cheek v. Dyess, 1 So.3d 1025, 1029 (Ala.Civ.App.2007).”

Discussion

The father argues that the trial court erred in modifying the custody of A.S. because, he says, the evidence did not meet the custody-modification standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984).
“The burden set out in [Ex parte ] McLendon [, 455 So.2d 863 (Ala.1984),] requires the parent seeking a custody change to demonstrate that a material change in circumstances has occurred *521 since the previous judgment, that the child’s best interests will be materially promoted by a change of custody, and that the benefits of the change will more than offset the inherently disruptive effect resulting from the change in custody. Ex parte McLendon, 455 So.2d at 866.”
Dean v. Dean, 998 So.2d 1060, 1065 (Ala.Civ.App.2008).
The father argues that the trial court erred in awarding the mother custody of A.S. because, he says, the mother failed to present sufficient evidence supporting the allegations in her petition. The father asserts that the trial court erred because the incident involving A.S. referred to by the mother does not rise to the level of domestic violence, and, thus, he argues, it was improper for the trial court to modify custody of A.S. based on that incident.
The father testified that the incident in which he had slapped A.S. had been raised at a previous hearing on the mother’s modification petition in June 2010. A.S. testified, however, that the incident occurred “a couple months before school let out.” Based on A.S.’s testimony, the trial court could have concluded that the incident had occurred in the spring of 2011, some eight months before the hearing was conducted. Section 80-8-134, Ala.Code 1975, provides that, in custody-modification proceedings, “a finding that domestic or family violence has occurred since the last custody determination constitutes a finding of change in circumstances.” (Emphasis added.) Because the trial court could have interpreted A.S.’s testimony as indicating that the incident in which the father slapped A.S. had occurred in 2011, after the parties were last in court on a previous modification petition in 2010, we conclude that the trial court did not err in considering that incident.
Section 30-3-131, Ala.Code 1975, provides:
“In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that domestic or family violence has occurred raises a rebuttable presumption by the court that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of domestic or family violence. Notwithstanding the provisions regarding rebuttable presumption, the judge must also take into account what, if any, impact the domestic violence had on the child.”
The father asserts that the incident in which he slapped A.S. did not rise to the level of domestic violence and that the trial court erred in finding that it did. We note, however, that, although the trial court concluded that that incident amounted to domestic violence, it also proceeded to conclude that the father had overcome the presumption following from the finding of domestic violence that the father should not have custody of the children.
Regardless, in accordance with § 30-3-131, the trial court was required to take into account any impact the domestic-violence incident had had on A.S. The father asserts on appeal that there was “no testimony as to what, if any, impact was had by the incident.” We agree. Neither the mother nor A.S. offered any testimony indicating that the incident had had a negative impact on A.S. A.S. testified that she knows the father loves her, that the father was just trying to discipline her when he slapped her, that she had never seen the father strike her siblings, and that he had never hit her like that or treated her like that on any other occasion. Section 30-3-134 provides that the trial court’s finding of domestic violence constitutes a finding *522 of a change in circumstances. Assuming, without deciding, that that finding amounted to a finding of a material change in circumstances,[1] as is required under McLendon, that is not the end of our inquiry. Under McLendon, the mother was not only required to demonstrate a material change in circumstances, she was also required to show “that the child’s best interests will be materially promoted by a change of custody, and that the benefits of the change will more than offset the inherently disruptive effect resulting from the change in custody.” Dean, 998 So.2d at 1065. The trial court’s finding that the father had rebutted the presumption in § 30-3-181 that it was not in A.S.’s best interests to remain in the father’s custody indicates that the mother had not satisfied her burden of proving that it would be in A.S.’s best interests for her custody to be modified. There was also no evidence presented indicating that the benefits of the change of custody of A.S. from the father to the mother would offset any disruptive effects from that change.
Although the trial court was able to consider the testimony of A.S. in formulating its judgment, this court stated in Glover v. Singleton, 598 So.2d 995, 996 (Ala.Civ.App.1992):
“Here, there is simply no evidence to show that a change of custody is necessary. At trial, there was no mention of the child’s needs or the ability of the father to care for her. There is certainly nothing to indicate that the mother is anything less than an exemplary parent. It does not appear from the child’s testimony that she is particularly unhappy in her mother’s home. The child merely prefers to live with her father at this time. Under Alabama law, this is simply not enough to justify a change of custody.”
In the present case, excepting the trial court’s findings regarding the incident in which the father slapped A.S., the only factor considered by the trial court in modifying the custody of A.S. was A.S.’s preference. Like in Glover, the evidence revealed that A.S. loves the mother and the father and that she is happy in both homes, but that she simply prefers to live with the mother. That is simply not enough to justify a change in custody.
Because the evidence in the present case did not meet the burden required for a modification of custody discussed in McLendon, we reverse the trial court’s judgment modifying the custody of A.S., and we remand the case for the entry of a judgment consistent with this opinion.
ON REHEARING EX MERO MOTU: OPINION OF SEPTEMBER 7, 2012, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
BRYAN and THOMAS, JJ., concur.
THOMPSON, P.J., dissents, with writing, which PITTMAN, J., joins.

. See Rich v. Rich, 887 So.2d 289, 303 (Ala.Civ.App.2004) (Yates, P.J., dissenting) ("[A] finding of domestic abuse under § 30-3-134 may not always be a 'material' change in circumstances....”).