RUSSELL, Judge.
This child custody case originated in October 1988 when the aunt of K.G., a five-year-old child, filed a petition in the trial court, seeking temporary custody of K.G. An ex parte hearing was held on October 12,1989, and on November 22,1989, temporary custody was awarded to the aunt. The trial court issued a pick-up order on January 25, 1990, and the child was picked up on August 20, 1990, and taken from New York to Alabama.
On May 30, 1991, after bifurcated proceedings were held in Alabama and New York, the trial court entered an order finding the child to be a dependent child and continuing the temporary care, custody, and control of the child in the aunt. The mother appeals. We reverse and remand.
The record reveals that in 1988, prior to the filing of the petition by the aunt and after the father had been charged with the rape of his stepdaughter, the mother, the father, and K.G. left Alabama and settled in Whitehall, New York. As noted above, the temporary custody of K.G. was granted to the aunt over one year after the filing of her petition, and the child was picked up approximately nine months later, three days after the apprehension and arrest of the father. The record does not provide evidence of any type of notice to the mother of the initial hearing.
Subsequent to the return of K.G. to Alabama, it was determined that jurisdiction remained in Alabama; however, pursuant to an order of the trial court, a hearing was held in the Washington County Family Court in Salem, New York, to take the testimony of the mother and her witnesses. The transcript of that hearing and the exhibits were forwarded to the trial court and were included in the record on appeal. The trial court also heard testimony from the aunt and ordered an investigation of the aunt’s home.
The mother’s testimony indicates the following: The mother left Alabama at the constant urging of the father after being convinced of his innocence, being unable to find any support or assistance with problems resulting from the charges against him, and being told that K.G. could be taken away from her at any time. The father was also disabled with diabetes, and the mother worked to support the family both in Alabama and in New York. Although the father tried to restrict the activities of the mother and K.G. while in New York, they had numerous outings and K.G. played with other children. K.G. also stayed with a daycare provider in the same building as their apartment. There have never been any charges of neglect or abuse against the mother or the father concerning K.G., and no physician ever expressed concern about abuse of K.G. The mother has been very distraught and upset since K.G. has been removed from her care. Although the mother had been laid off from her job, she receives unemployment benefits and expects to go back to work. The mother and K.G. would be eligible for K.G. to return to the day care system while the mother works.
The exhibits from the New York hearing include a probation report, which was prepared for the assistance of counsel and the court, and a psychological report concerning the mother. The probation report, which resulted from an interview of the mother at her home on November 15, 1990, indicates that the mother’s apartment contains a living room, kitchen, bathroom, and two bedrooms. It was nicely furnished and extremely orderly. K.G.’s bedroom presented a loving and wholesome environment, and the mother presented herself as a loving, concerned parent. There are no allegations or charges pending against the mother in New York, and the probation worker could find no reason not to grant custody to the mother.
The psychological report was prepared after two evaluation sessions with the mother in November and December 1990. The person who drafted the report found that, although the mother may have made *149 errors in judgment, particularly leaving Alabama with the father and taking the child, she had learned from her mistakes. No problems caúsed by psychiatric difficulties were found. He further stated that the mother demonstrated devotion to K.G. and has a solid, loving bond with her. He could see no mental health grounds for not reuniting the mother and K.G.
The “law guardian,” who was appointed in New York to represent K.G., stated that she could find nothing in the reports that indicated that the mother was an unfit parent. She only questioned the mother’s judgment in leaving Alabama with the father. In a telephone conversation with the child, she felt that she was a well-adjusted, intelligent child, who missed her mother.
Three of the mother’s friends, one of whom was also the daycare provider for K.G. in New York, testified that the mother and the child had a very close relationship and that the mother was warm and caring and always concerned about K.G.
The mother contends that the aunt had the burden of proof to show that the mother was unfit and that the burden was not met. We agree.
There is a presumptive superior right of a parent to the custody of his or her child as against a third person, which may be overcome only by “clear and convincing evidence that the parent is so unfit or unsuited for custody that the best interest of the child will be served by granting custody to the third person.” McLendon v. McLendon, 455 So.2d 861, 862 (Ala.Civ.App.1984). However, after a voluntary forfeiture of custody, or a prior decree removing custody, including temporary custody, from the natural parent and awarding it to a nonparent, that presumption does not apply. Ex parte McLendon, 455 So.2d 863 (Ala.1984); Sims v. Sims, 515 So.2d 1 (Ala.Civ.App.1987).
While the aunt, citing Sims, argues that the McLendon rule is not activated where there are pendente lite orders and should not be considered, we point out that, according to the trial court’s initial order, there was an award of temporary custody. Temporary custody awards, as opposed to pendente lite awards, are generally intended to last until the court is petitioned by one of the parties to modify the decree and constitute final orders from which an appeal may lie to this court. Sims, 515 So.2d 1. In the present case the November 22, 1989, order was to “remain in full force and effect, and jurisdiction [was] retained by [the trial] court until such time as further hearing is requested or appears necessary.” These temporary custody awards, as the one noted here, activate the McLen-don rule when a custodial parent seeks to regain custody, and that parent’s presumptive superior right does not apply. Id.
However, here the mother alleges that there was no notice to her of the action filed by the aunt, even by publication, and no opportunity to be heard when the initial order removing custody from her was entered. As this court stated in Webb v. Webb, 508 So.2d 281, 281-82 (Ala.Civ.App.1987),
“[a]s a general rule, a parent who has custody of a minor child cannot be deprived of that custody, even temporarily, without being given adequate notice and an opportunity to be heard. Since both of those elements were missing in the [November 22, 1989,] proceeding which resulted in the ex parte award of temporary custody of the child to the [aunt], the evidentiary burden did not shift to the mother on the final hearing but it remained with the [aunt].”
(Citations omitted.)
Because the record indicates that the mother had no notice or an opportunity to be heard at the initial hearing, the burden remained with the aunt, id., requiring a finding by the trial court that the mother is “unfit or unsuited for custody” before custody could be awarded to the aunt. McLendon, 455 So.2d 861. The trial court made no such finding, and, from a review of the record, we find that the trial court was correct. The evidence from New York revealed that the mother was a loving, caring parent who took good care of her child and provided a good home for the *150 child — clearly not characteristics of an unfit parent.
Based on the above, we find that the trial court erred in awarding temporary custody to the aunt, a nonparent, absent a finding of unfitness of the mother or a prior grant of temporary custody with adequate notice to the mother and an opportunity to be heard. Therefore, the judgment is reversed and the cause remanded with instructions to the trial court to enter an order granting custody of K.G. to the natural mother.
We pretermit a discussion of the other issues presented by the mother as unnecessary.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN, J., concur.