BRYAN, Judge.
M.B. and E.B. (“the maternal grandparents”) appeal from a judgment of the Jefferson Juvenile Court modifying the custody of L.B., a boy born in January 2001, and J.B., a girl born in September 1999 (L.B. and J.B. are hereinafter collectively referred to as “the children”), by transferring their custody from the maternal grandparents to S.B. (“the mother”). We reverse and remand.
On May 26, 2006, the maternal grandparents filed a complaint alleging that the children were dependent, a custody affidavit, and a petition seeking custody of the children. The maternal grandparents’ dependency complaint alleged, among other things, that the mother had become unable to adequately care for the children because she had “developed a dependence” on drugs and alcohol. In June 2006, the Jefferson County Department of Human Resources (“DHR”) conducted a home evaluation of the maternal grandparents and concluded that the maternal grandparents were able to provide “a safe, stable, and secure environment for [the children].” After conducting a hearing, the juvenile court, on July 26, 2006, entered an order that, among other things, found the children to be dependent based on a stipulation of the parties, awarded the custody of the children to the maternal grandparents, and awarded the mother visitation with the children “as agreed to and arranged by the parties.” The juvenile court’s July 26, 2006, order also required that the mother participate in individual counseling, that the mother obtain and maintain stable housing and employment, and that the mother “successfully complete drug treatment to be followed by aftercare and at least six months of random drug screens.”
On July 81, 2007, the mother filed an “emergency petition to modify,” alleging that there had been a “material and substantial change in circumstances” since the entry of the juvenile court’s July 26, 2006, order; specifically, the mother alleged that the maternal grandparents had refused to allow the mother to exercise “reasonable visitation” with the children. In September 2007, DHR conducted a home evaluation of the mother and concluded, among other things, that the mother was able “to offer [the children] safety, security, and love.” In November 2007, the mother filed an “emergency motion for contempt,” again alleging that the maternal grandparents had failed to allow her to exercise reasonable visitation with the children. After conducting a hearing, the juvenile court, on February 4, 2008, entered an order setting forth a more specific visitation schedule for the mother.
After conducting an ore tenus proceeding, the juvenile court, on July 18, 2008, entered a judgment modifying the custody of the children by transferring their custody from the maternal grandparents to the mother and awarding the maternal grandparents certain visitation rights. On July 31, 2008, the maternal grandparents moved the juvenile court to alter, amend, *1219 or vacate its July 18, 2008, judgment. Then, on August 18, 2008, the juvenile court entered an order purporting to deny the maternal grandparents’ motion to alter, amend, or vacate.[1] The maternal grandparents filed a notice of appeal on August 25, 2008.[2]
The maternal grandparents raise two arguments on appeal. First, the maternal grandparents argue that the juvenile court failed to apply the standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984) (“the McLendon standard”), in modifying the custody of the children. The maternal grandparents also argue that “[pjroper application of the McLen-don standard to the undisputed facts below requires that the children remain in the custody of [the maternal grandparents].” Conversely, the mother argues that the juvenile court “was never bound to follow the dictates of the McLendon standard” because, she asserts, “[a]ll parties knew that the initial custody recommendation [that awarded custody of the children to the maternal grandparents] was one for temporary custody.” The mother also argues that sufficient evidence supports the juvenile court’s July 18, 2008, judgment and that “the testimony overwhelmingly shows that [she] is a good mother [and] provides for her children physically, emotionally, mentally and spiritually.”
“Generally, a trial court’s custody determination following the presentation of ore tenus evidence is presumed correct and that judgment will not be set aside on appeal absent a finding that the trial court abused its discretion or that its determination is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ.App.1995). However, where a trial court bases its custody determination on an improper custody-modification standard, that judgment is due to be reversed. See generally B.S.L. v. S.E., 826 So.2d 890 (Ala.Civ.App.2002).”
C.A.M. v. B.G.H., 869 So.2d 507, 508 (Ala.Civ.App.2003). Furthermore, the issue whether the juvenile court applied the correct custody-modification standard is a question of law; thus, the ore tenus rule has no application, and this court’s review is de novo. Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994).
As a preliminary matter, we note that the juvenile court’s July 26, 2006, order that initially modified the custody of the children contains no indication that that order was intended to operate as a “temporary” order. The juvenile court’s July 26, 2006, order set no further hearings on the matter, and, in fact, the last page of that order provides, in pertinent part, that “[t]his matter is CLOSED to further Court Review.” (Capitalization in original.) Thus, we conclude that the mother’s assertion that the juvenile court’s July 26, 2006, order was a temporary (i.e., nonfinal) order is without merit.[3] Accord *1220 ingly, the maternal grandparents are correct in asserting that the juvenile court was required to apply the McLendon standard in ruling on the mother’s custody-modification petition. See Spears v. Wheeler, 877 So.2d 607, 608 (Ala.Civ.App. 2003) (“Where a prior custody judgment exists, a party seeking a change in custody must show[, pursuant to Ex parte McLen-don,,] that the change will materially promote the child’s best interest and that the benefits of the requested change will more than offset the inherently disruptive effect caused by uprooting the child.”).
During the closing statements presented at the hearing on the mother’s custody-modification petition, the mother’s counsel asserted, in pertinent part, that
“Alabama law further states that a child or children has a prima facie right to have custody of his or her child in a custody dispute between a parent and the non-parent. The non-custodians must prove that the parent is guilty of such misconduct or neglect to a degree that renders that parent an unfit or improper person to be entrusted with the care and upbringing of the child.”
(Emphasis added.) In response, the maternal grandparents’ counsel asserted, in pertinent part, that “when we’ve got a situation like this, you’ve got to go back to McLendon. This is the McLendon standard.” However, the juvenile court made no statement on the record regarding which custody-modification standard it would apply in ruling on the mother’s custody-modification petition. Furthermore, the juvenile court’s July 18, 2008, judgment offers no indication of which custody-modification standard it applied other than stating that “[i]t appears that the mother has done everything [the juvenile court] has ordered and that she has in all respects defeated the problems that brought her before [the juvenile court].”
The juvenile court’s July 18, 2008, judgment and the record on appeal are silent with respect to which standard the juvenile court applied in modifying custody. However, we conclude that, because the juvenile court wholly failed to employ any of the language set forth in the McLendon standard, the custody-modification standard applied by the juvenile court — whichever standard that may have been — was not the correct standard, which, as noted above, was the McLendon standard. Therefore, the juvenile court’s July 18, 2008, judgment is reversed, and the cause is remanded for proceedings consistent with this opinion. See Richardson v. Fotheringham, 950 So.2d 339, 342 (Ala.Civ.App.2006); Spears, 877 So.2d at 608; C.A.M., 869 So.2d at 508; Moncrief v. Gilbert, 675 So.2d 895, 896 (Ala.Civ.App.1996); and Pullum v. Webb, 669 So.2d 925, 927 (Ala.Civ.App.1995).
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. The maternal grandparents' postjudgment motion was denied by operation of law. See Rule 1(B), Ala. R. Juv. P. ("A postjudgment motion is deemed denied if not ruled on within 14 days of filing.”).

. The maternal grandparents timely filed their notice of appeal within 14 days of the denial by operation of law of their postjudgment motion; thus, this court has jurisdiction over the maternal grandparents’ appeal. See Rule 28(C), Ala. R. Juv. P. ("Written notice of appeal shall be filed within 14 days of the date of the entry of the order or judgment appealed from, whether the appeal is to an appellate court or to the circuit court for trial de novo.”).

.We also note that, even if we had concluded that the juvenile court's July 26, 2006, order could properly be considered to be a temporary order, that conclusion would not support the mother’s argument that the juvenile court was not required to apply the McLendon stan *1220 dard in ruling on her custody-modification petition. See A.L. v. S.J., 827 So.2d 828, 834—35 (Ala.Civ.App.2002) (quoting C.G. v. C.G., 594 So.2d 147, 149 (Ala.Civ.App.1991)) (" ‘[T]emporary custody awards, as opposed to pendente lite awards, are generally intended to last until the court is petitioned by one of the parties to modify the [judgment] and constitute final orders from which an appeal may lie to this court.' ").