BRYAN, Judge.
M.B. and E.B. (“the maternal grandparents”) appeal a judgment of the Jefferson *80 Juvenile Court that modified the custody of their granddaughter, J.B., born in 1999, and their grandson, L.B., born in 2001 (J.B. and L.B. are hereinafter referred to collectively as “the children”), by transferring custody from the maternal grandparents to S.B. (“the mother”). We reverse.
This is the second time this case has been before this court on appeal. In M.B. v. S.B., 12 So.3d 1217 (Ala.Civ.App.2009), we set forth the procedural history of this case as follows:
“On May 26, 2006, the maternal grandparents filed a complaint alleging that the children were dependent, a custody affidavit, and a petition seeking custody of the children. The maternal grandparents’ dependency complaint alleged, among other things, that the mother had become unable to adequately care for the children because she had ‘developed a dependence’ on drugs and alcohol. In June 2006, the Jefferson County Department of Human Resources (‘DHR’) conducted a home evaluation of the maternal grandparents and concluded that the maternal grandparents were able to provide ‘a safe, stable, and secure environment for [the children].’ After conducting a hearing, the juvenile court, on July 26, 2006, entered an order that, among other things, found the children to be dependent based on a stipulation of the parties, awarded the custody of the children to the maternal grandparents, and awarded the mother visitation with the children ‘as agreed to and arranged by the parties.’ The juvenile court’s July 26, 2006, order also required that the mother participate in individual counseling, that the mother obtain and maintain stable housing and employment, and that the mother ‘successfully complete drug treatment to be followed by aftercare and at least six months of random drug screens.’
“On July 31, 2007, the mother filed an ‘emergency petition to modify,’ alleging that there had been a ‘material and substantial change in circumstances’ since the entry of the juvenile court’s July 26, 2006, order; specifically, the mother alleged that the maternal grandparents had refused to allow the mother to exercise ‘reasonable visitation’ with the children. In September 2007, DHR conducted a home evaluation of the mother and concluded, among other things, that the mother was able ‘to offer [the children] safety, security, and love.’ In November 2007, the mother filed an ‘emergency motion for contempt,’ again alleging that the maternal grandparents had failed to allow her to exercise reasonable visitation with the children. After conducting a hearing, the juvenile court, on February 4, 2008, entered an order setting forth a more specific visitation schedule for the mother.
“After conducting an ore tenus proceeding, the juvenile court, on July 18, 2008, entered a judgment modifying the custody of the children by transferring their custody from the maternal grandparents to the mother and awarding the maternal grandparents certain visitation rights. On July 31, 2008, the maternal grandparents moved the juvenile court to alter, amend, or vacate its July 18, 2008, judgment. Then, on August 18, 2008, the juvenile court entered an order purporting to deny the maternal grandparents’ motion to alter, amend, or vacate. The maternal grandparents filed a notice of appeal on August 25, 2008.”
12 So.3d at 1218-19 (footnotes omitted).
In M.B., the maternal grandparents argued that the juvenile court had “failed to apply the standard set forth in” Ex parte McLendon, 455 So.2d 863 (Ala.1984) (“the McLendon standard”). 12 So.3d at 1219. *81 We reversed the judgment of the juvenile court and remanded the action, holding that “because the juvenile court wholly-failed to employ any of the language set forth in the McLendon standard, the custody-modification standard applied by the juvenile court — whichever standard that may have been — was not the correct standard .12 So.3d at 1220.
On remand, the juvenile court heard arguments from the maternal grandparents, the mother, and the guardian ad litem of the children during a hearing on January 21, 2009, but it took no additional testimony from the parties. On February 6, 2009, the juvenile court entered an “Order on Remand,” which stated that “[t]he evidence and oral testimony was subjected to the rigorous and exacting standard set forth in the case of Ex parte [McLendon ], 455 So.2d 863 (Ala.1984), and this was the standard used by this Court to decide this case.” The order further stated that there was a material change of circumstances “demonstrated by evidence and testimony of a series of changes in behavior, finances, circumstances, parental fitness, and overall situation of the mother.” The juvenile court also found that
“[t]he result of the changes made were not to merely improve, but to substantially change the situation of the children by their now having a mother capable of being a strong and good parent. This improved situation ... was beneficial to the children so that a change in custody from the maternal grandparents to the mother would materially promote the welfare of the children.”
Finally, the juvenile court found that “the positive good brought about by a change of custody from the maternal grandparents to the mother would more than offset the disruptive effect of the custody change .... ” The maternal grandparents timely appealed.
On appeal, the maternal grandparents argue that the mother failed to meet her burden under the McLendon standard, that the order of the juvenile court on remand simply recites the McLendon standard without applying it, and that the application of the McLendon standard to the facts requires a finding that the children should remain in the custody of the maternal grandparents. We agree with the maternal grandparents that the mother failed to meet her burden under the McLendon standard.
As discussed in M.B., pursuant to Ex parte McLendon, the mother, as the party seeking a modification of custody, was required
“to demonstrate that a material change in circumstances ha[d] occurred since the previous judgment, that the child’s best interests [would] be materially promoted by a change of custody, and that the benefits of the change [would] more than offset the inherently disruptive effect resulting from the change in custody. Ex parte McLendon, 455 So.2d at 866.”
Dean v. Dean, 998 So.2d 1060, 1065 (Ala. Civ.App.2008).
A review of the record reveals the following pertinent facts. The mother lived in the home of the maternal grandparents with the children while she was in nursing school, from approximately 2001 through 2004. The mother testified that she began work as a nurse in January 2004, and, at some point in 2004, she and the children moved out of the maternal grandparents’ home. The maternal grandfather testified that, when the mother began working, he and the maternal grandmother kept the children during the mother’s 12-hour shifts and that the mother had the children “about two days a week generally.”
*82 The mother testified that she self-reported her substance-abuse problem in February 2006. The maternal grandfather testified that he and the maternal grandmother were already caring for the children at that time and that the only reason they filed the dependency petition in May 2006 was because the mother was attempting to give custody of the children to an individual that she had met during her rehabilitative treatment. The mother spent several months in both inpatient and outpatient treatment facilities, and she “graduated” from her rehabilitative treatment in October 2006. The mother stated that she had been “clean” since February 2006, and she submitted evidence of random drug screens to substantiate that claim.
It is undisputed that, while the children were in their custody, the maternal grandparents provided full support for the care of the children and paid all the expenses of the children, including expenses for day care, school, and extracurricular activities. It was also undisputed that the mother contributed nothing to the support of the children while they were in the custody of the maternal grandparents.
While the children were in the custody of the maternal grandparents, the mother exercised visitation with the children every weekend. The mother stated that, when she had visitation with the children, she cooked dinner and helped the children with their homework, and she and the children occasionally went to a “game night” with some of the mother’s friends. The mother also participated in school functions with the children and became a “helper” coach on the younger child’s soccer team. The mother also described disciplinary techniques she used with the children, including putting the children in time-out and making a disciplinary chart with different forms of punishment for various types of misbehavior. The mother stated that, if custody were returned to her, the children would remain at the same school.
The mother’s boss testified that she had hired the mother in 2006 to be a member of the kitchen staff at a local deli; at that time, the mother was paid an hourly wage. However, in March 2007 the mother was promoted to the general manager of the deli. It is undisputed that the mother was an excellent employee. The mother testified that her nursing license had been suspended, but her license is now currently active. She stated that she would eventually like to return to the field of nursing to teach nursing students.
Kevin Hays, the mother’s counselor, testified that he had begun counseling the mother in February 2006. Hays testified that, based on the progress the mother had made in therapy, the mother has proper parenting skills and is “capable of being a parent,” but he admitted that he had only seen the mother around the children 1 time for approximately 15 minutes. Hays stated that, in addition to counseling the mother for substance-abuse issues, he and the mother are also discussing other issues such as “emotional management,” grief regarding her brother’s death, and the “changes within her family system.” Further, Hays testified that the mother was dealing with trauma issues regarding sexual abuse she had experienced as a child, her adoption by the maternal grandparents, and the domestic violence she had suffered at the hands of the father of the children.[1] Hays stated that he and the mother have not been able to discuss all the mother’s issues and that it would take *83 more than a year to work through all the above-listed issues.
The maternal grandparents called the mother’s brother and sister to testify. Both the brother and the sister testified that the mother has a hostile relationship with the family and that they do not have a close relationship with the mother because, they say, the mother is prone to episodes of anger.
First, we note that the mother’s “Emergency Petition to Modify” filed in July 2007 stated that “a material and substantial change in circumstances” had occurred because the maternal grandparents had “refuse[d] to allow reasonable visitation” between the mother and the children as required in the dependency order awarding the maternal grandparents custody. Testimony of the parties indicates that the maternal grandparents did not approve of the children having overnight visitation with the mother when the mother’s lesbian partner was present.[2] This court has repeatedly held that visitation disputes are not a reason to modify custody. See C.J.L. v. M.W.B., 879 So.2d 1169, 1180 (Ala.Civ. App.2003) (“Our decisions have consistently indicated that a change of custody is not an appropriate sanction for visitation problems.” (citing Kelley v. Akers, 793 So.2d 821, 826-27 (Ala.Civ.App.2001); Vick v. Vick, 688 So.2d 852, 856 (Ala.Civ.App. 1997); Means v. Means, 512 So.2d 1386, 1389 (Ala.Civ.App.1987); and Pons v. Phillips, 406 So.2d 932, 935 (Ala.Civ.App. 1981))).
In its order on remand, the juvenile court found that the mother’s improvement in “behavior, finances, circumstances, parental fitness, and overall situation” was a material change in circumstances. Although the improvements that the mother has made since 2006 are no doubt laudable, the appellate courts of this state have consistently held that
“[i]t is not enough that the parent show that the parent has reformed his or her lifestyle or improved his or her financial position; the parent must show both that he or she is fit and that the custody change materially promotes the best interests and welfare of the child. McLendon, 455 So.2d at 866.”
Gamble v. Segers, 833 So.2d 658, 661 (Ala. Civ.App.2002). See also McCormick v. Ethridge, 15 So.3d 524, 527 (Ala.Civ.App. 2008); Goetsch v. Goetsch, 990 So.2d 403, 406 (Ala.Civ.App.2008); and Ex parte Jones, 620 So.2d 4, 6 (Ala.1992).
After a careful review of the record, we hold that the record does not contain any evidence to support a finding that changing custody of the children from the maternal grandparents to the mother would materially promote the best interests and welfare of the children. The juvenile court made that finding based solely on the fact that the children would have the benefit of being raised by their mother instead of the maternal grandparents. Although there may be benefits to the children’s being raised by the mother, the requirements of Ex parte McLendon nevertheless apply, and the evidence in the record fails to show that the mother met her burden of proving that the best interests and welfare of the children will be materially promoted by changing custody to the mother.
*84 Decisions from this court and from our supreme court support the conclusion that the prospect of children being raised by a natural parent is not sufficient, in and of itself, to overcome the burden set forth in Ex parte McLendon. In Ex parte Couch, 521 So.2d 987, 989 (Ala.1988), our supreme court summarized the facts in Ex parte McLendon:
“In McLendon, a judgment awarded custody of the divorced parents’ infant child to the paternal grandparents. Approximately five years later, after the mother had remarried and had another child, she attempted to regain legal and physical custody of her first child. The court held that the appropriate standard was whether a ‘change’ in custody would materially promote the welfare of the child. Because there were equal advantages and disadvantages to living with either the mother or the grandparents, the court held that moving the child would not materially promote the welfare of the child; therefore, custody remained with the grandparents. The reason for the stricter standard after custody has been determined once, is that uprooting children and moving them can be traumatic. Therefore, the benefit of moving the children must outweigh the potential harm. McLendon, supra.”
See also Gamble v. Segers, supra (holding that, after the paternal grandmother had been awarded temporary physical custody of the child, the mother failed to show that changing custody of the child to the mother would materially promote the best interests and welfare of the child).
Nothing in the record indicates that the benefit of moving the children from the care and custody of the maternal grandparents to the custody of the mother would outweigh the potential harm of uprooting the children from the only stable home that they have ever known. The record indisputably shows that the children lived with the maternal grandparents for approximately three years — from 2001, when the older child was an infant and the younger child was a newborn, to 2004 — before they moved into a home with the mother. The mother admits that, while the children were living in a home with her, she did not take proper care of the children because of her substance-abuse problem. The record also demonstrates that the maternal grandparents cared for the children while the mother worked 12-hour shifts as a nurse from 2004 through the time the mother entered rehabilitative treatment in 2006, at which time the maternal grandparents had legal and physical custody of the children.
Also, as the Alabama Supreme Court noted in Ex parte Couch when discussing Ex parte McLendon, there seems to be “equal advantages and disadvantages to living with either the mother or the grandparents.” 521 So.2d at 989. Although the mother produced the testimony of her counselor, who stated that the mother possessed good parenting skills and was capable of being a parent to the children, the record indicates that the maternal grandparents were also good caretakers of the children. In fact, in its July 18, 2008, order originally modifying custody to the mother, the juvenile court found that the maternal grandparents had “provided a stable and loving home for the children.”
The supreme court in Ex parte McLen-don noted that
“[t]he most that the mother has shown is that her circumstances have improved, and she is now able to provide for the child in the same manner in which the grandparents have been providing for her. She failed to show that changing the custody materially promotes the welfare and best interest of the child.”
*85 455 So.2d at 866. The mother in this case presented testimony regarding her disciplinary methods, her present ability to financially support the children, and her ability to provide stable housing for the children. While neither party produced evidence regarding the maternal grandparents’ disciplinary methods, the record indicates that the children were provided financial support and stable housing while in the custody of the maternal grandparents. Therefore, like the McLendon court, we hold that the mother has “failed to show that changing the custody [of the children will] materially promote[] the welfare and best interest of the [children].” 455 So.2d at 866.
Although the mother argues that she met her burden under the McLendon standard, the brief filed by the mother fails to argue how the change of custody will materially promote the best interest and welfare of the children, and, in fact, she fails to acknowledge that “material promotion” is a factor that she had the burden of proving. In M.B., we held that the custody-modification standard that had been applied by the juvenile court could not be determined. On remand, the juvenile court properly heard no additional testimony of the parties; instead, the juvenile court made its custody determination, purporting to apply the McLendon standard, based on the case as presented by the mother when she was apparently under the impression that she was not required to meet the burden imposed under Ex parte McLendon. See M.B. Because the mother failed to meet her burden under Ex parte McLendon to show that a change in custody from the maternal grandparents to the mother would materially promote the best interests and welfare of the children, the judgment of the juvenile court must be reversed.
The maternal grandparents also argue that the juvenile court erred in failing to tax the costs of the first appeal against the mother, as ordered by this court in the certificate of judgment issued in M.B. on January 28, 2009. On remand, on February 11, 2009, 14 days after this court issued the certificate of judgment in M.B., the maternal grandparents filed a motion in the juvenile court seeking to tax the costs on appeal against the mother. The mother opposed the maternal grandparents’ motion, but she did not dispute the affidavit of counsel for the maternal grandparents setting out the costs of appeal. On February 19, 2009, the juvenile court denied the maternal grandparents’ motion.
Rule 35(a), Ala. R.App. P., states, in pertinent part, that “if a judgment is reversed, costs shall be taxed against the appellee unless otherwise ordered ....” In Ex parte Blue Cross & Blue Shield of Alabama, 473 So.2d 1045, 1046-47 (Ala. 1985), our supreme court held that ‘“[a] judgment of [the appellate] Court, ordering a party to pay the cost of appeal, is final.... Thus, unless [the appellate] Court orders otherwise, when a judgment is reversed, costs shall be taxed against the appellee.’ ”. (Quoting Martin v. Loeb & Co., 349 So.2d 9, 10 (Ala.1977).) The juvenile court did not have discretion to deny the maternal grandparents’ motion seeking to tax the costs of the appeal against the mother, as ordered by this court. Ex parte Blue Cross & Blue Shield of Alabama, supra. Therefore, this case is remanded to the juvenile to enter an order taxing the costs of the first appeal in this case against the mother, as previously ordered by this court, in accordance with Rule 35, Ala. R.App. P.
REVERSED AND REMANDED WITH INSTRUCTIONS.
*86 PITTMAN, THOMAS, and MOORE, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. The mother and the father of the children never married, and the record indicates that the father’s contact with the children is sparse, if not nonexistent.

. The evidence in the record suggests that the maternal grandparents began to limit the mother's overnight visitation after the younger child reported having witnessed the mother engaged in ''inappropriate” contact with another woman; the record further reflects that the children may have witnessed the mother engaged in "inappropriate” behavior with her current lesbian partner.