BRYAN, Judge.
This appeal was taken by C.A.H. (“the mother”) from a custody-modification proceeding in the Talladega Juvenile Court (“the juvenile court”). The mother and J.B.S. (“the father”) never married, but they had two children: W.G.S., a boy born in August 2006 (“the son”), and S.B.S., a girl born in July 2007 (“the daughter”) (referred to collectively as “the children”).
On November 16, 2006, the mother, through the Alabama Department of Human Resources (“DHR”), filed a petition for child support for the son in the juvenile court. The father was adjudicated the father of the son on January 30, 2007. No child support was ordered at that time because the parties were apparently living together. On July 18, 2007, the father and the mother signed a paternity affidavit regarding the daughter. On or about September 21, 2007, the mother, again through DHR, filed a “petition to modify child support,” seeking support for the son and the daughter. On May 23, 2008, the juvenile court adjudicated the father to be the father of the daughter, and it ordered the father to pay $358 a month in child support for the children.
On or about July 25, 2008, the juvenile court entered an order that reflected an agreement of the parties regarding custody of the children. The parties were awarded joint legal custody of the children, and the mother was awarded primary physical custody, subject to the father’s visitation rights. The order included the language regarding notice of relocation required under the Alabama Parent-Child Relationship Protection Act, § 30-3-130 et seq., Ala.Code 1975 (“the Act”).
On July 16, 2008, the mother informed the father that she intended to relocate to North Carolina with the children. On August 11, 2008, the father filed an objection to the mother’s proposed relocation, a request for a temporary and a permanent injunction preventing the mother from relocating with the children to North Carolina, and a petition for modification of custody.[1] He alleged that the proposed *207 change in the principal residence of the children constituted a material change in circumstances and that the best interests of the children would be materially promoted if he was awarded custody of the children. The father also sought an award of child support. The mother answered the father’s petition, and she denied that she was planning to move to North Carolina with the children. The mother alleged that the father was in arrears on child-support payments and that the child-support order dated May 28, 2008, was due to be modified because the son had died.[2]
The juvenile court held an ore tenus hearing on all the issues raised by the parties on November 20, 2008, and the juvenile court issued a judgment on February 27, 2009. The juvenile court modified custody of the daughter and awarded the father and the mother joint physical custody of the daughter in alternating, one-week intervals. The juvenile court ordered specific holiday visitation for both parties, it ordered the parties to equally share the cost of uncovered medical expenses for the daughter, and it ordered that neither party was required to pay child support. The mother appealed.[3]
The daughter was approximately 16 months old at the time of the final hearing. According to the father, the mother told him at the daughter’s first birthday party in July 2008 that she was moving with the children to North Carolina. The father testified that he did not object at that time because he did not want to cause a scene. The father admitted that the mother had told him three or four weeks before the final hearing that she was not going to move to North Carolina.
The father stated that the mother does not take care of the daughter, and, as an example, he cited an occasion when the mother had sent the daughter to his home for visitation with holes in her pants. The father admitted that he was not current on his child-support obligation, but he testified that it was because he had paid approximately $2,900 for the son’s funeral expenses. He admitted that he had disregarded his court-ordered child-support obligation even though his daughter needed support. The father testified that he worked for a lawn-care company in the summer and that he worked as automobile salesman in the winter. However, the father’s income was not revealed.
The mother testified that she had informed the father of her intent to move to North Carolina in anticipation of her marriage to R.B., who was in the Army. R.B. was scheduled to be stationed in North Carolina for 10 months before being deployed overseas. The mother met R.B. on the Internet in October 2007, and he was stationed in South Korea at the time. The mother and R.B. met in person for the first time on August 2, 2008, when R.B. came to the mother’s home while he was on leave from the Army.[4] The mother mar *208 ried R.B. on August 16, 2008, apparently one week after the son was buried. The mother’s testimony indicated that she decided not to move to North Carolina after the son died. The mother was unemployed, and she stated that R.B. had paid for the daughter’s care because the father had not paid child support since August 2008.
There was limited testimony regarding the death of the son. Apparently, the son had accidentally drowned in the mother’s neighbor’s pool. The facts and circumstances leading up to the son’s death are not in the record, but there was no indication that the mother was at fault. The attorneys for both parties referred to the son’s death as an “accident.” The mother stated that she also has a pool in her backyard and that, after the son died, she had placed a broom handle in a sliding glass door in her home so that the daughter could not get out of her home. She stated that she had not made any changes to the gates around her home. She stated that the pool in her backyard was not covered but that there was a fence around her pool with a gate that was always locked.
A former friend of the mother testified that the mother had told her that she stayed up late with R.B. when he first came to the mother’s home, which was the week that the son had died, and that the mother had told her that the son had used a marker on the walls of the mother’s home the day before he died, indicating that the son had not been supervised at the time. She stated that their friendship ended after the son died because the mother put her relationship with R.B. before her and the daughter.
The mother’s issues on appeal can be succinctly stated as follows: (1) whether the juvenile court erred in modifying custody of the daughter and (2) whether the juvenile court erred in eliminating child support.
Initially, we will briefly address whether the Act applied in this case. We note that nothing in the juvenile court’s judgment indicates that it relied on, or even considered, the Act when it modified custody of the daughter. Although the father’s petition to modify custody was based on his belief that the mother was moving to North Carolina with the children, the evidence indisputably showed that the mother was not moving to North Carolina with the daughter. The Act did not apply in this case because a proposed change of the principal residence of the daughter was not before the juvenile court. See generally § 30-3-162, Ala.Code 1975 (setting forth the applicability of the Act).
We will also briefly address the mother’s argument that the judgment must be reversed and the case remanded to the juvenile court based only on the fact that the juvenile court did not specifically state, in the record or in its final judgment, what custody-modification standard it had applied. In support of her argument, the mother cites this court’s opinion in M.B. v. S.B., 12 So.3d 1217, 1220 (Ala.Civ.App.2009), in which we reversed a custody-modification determination, and remanded the case, because the “judgment and the record on appeal [we]re silent with respect to which standard the juvenile court applied in modifying custody.” We find the present case distinguishable from M.B. In M.B., the parties did not agree about which custody-modification standard applied to their case, Id. At the final hearing in M.B., the mother’s counsel argued that a standard in line with Ex parte Terry, 494 So.2d 628, 632 (Ala.1986), applied, while the grandparents maintained that the custody-modification standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984), applied. Id. No resolution *209 was reached regarding which custody-modification standard applied, and we reversed the judgment and remanded the case to the juvenile court because this court could not determine which standard the juvenile court had applied. We did not reverse the judgment and remand the case simply because the juvenile court had failed to make a specific recitation of the custody-modification standard it had applied in its final judgment. In the present case, the father used language from the McLendon standard in his petition to modify and there was never a dispute between the parties about whether the McLendon standard applied. Thus, we conclude that, in this instance, the juvenile court’s failure to state the custody-modification standard it used does not require us to reverse the judgment and remand the case.
Regarding the mother’s argument that the juvenile court’s judgment modifying custody of the daughter was unsupported by the evidence, we agree. The parties did not dispute that the custody-modification standard set forth in Ex parte McLendon applied because the mother had been awarded primary physical custody of the daughter in the July 25, 2008, order.
“The burden set out in McLendon requires the parent seeking a custody change to demonstrate that a material change in circumstances has occurred since the previous judgment, that the child’s best interests will be materially promoted by a change of custody, and that the benefits of the change will more than offset the inherently disruptive effect resulting from the change in custody. Ex parte McLendon, 455 So.2d at 866.”
Dean v. Dean, 998 So.2d 1060, 1065 (Ala.Civ.App.2008).
The father’s petition to modify custody was based on his belief that the mother was going to move to North Carolina with the children. However, the father argues that the juvenile court heard other evidence of a material change in circumstances sufficient to support its judgment, such as evidence indicating that the mother had put the needs of her husband, R.B., before the needs of the daughter and that the mother had placed the daughter in danger by failing to take additional safety precautions around her home after the son died. The father directs this court to evidence indicating that the mother married R.B. only two weeks after she had met him in person, that the mother had planned to move the children to North Carolina to live with R.B. at a time when she had never met him in person, and that the mother had not made any significant changes to the interior or the exterior of her home after the son accidentally drowned.
“On appellate review of custody matters, this court is limited when the evidence was presented ore tenus, and, in such circumstances, a trial court’s determination will not be disturbed ‘absent an abuse of discretion or where it is shown to be plainly and palpably wrong.’ Alexander v. Alexander, 625 So.2d 433, 434 (Ala.Civ.App.1993) (citing Benton v. Benton, [520 So.2d 534 (Ala.Civ.App. 1988) ]). As the Alabama Supreme Court highlighted in [Ex parte ] Patronas, [693 So.2d 473 (Ala.1997),] ‘ “[T]he trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue of custody.” ’ Patronas, 693 So.2d at 474 (quoting Ex parte Bryowsky, 676 So.2d 1322, 1326 (Ala.1996)). Thus, appellate review of a judgment modifying custody when the evidence was presented ore tenus is limited to determining whether there was sufficient evidence to *210 support the trial court’s judgment. See Patronas, 693 So.2d at 475.
“ ‘However, even under the ore tenus rule, “[w]here the conclusion of the trial court is so opposed to the weight of the evidence that the variable factor of witness demeanor could not reasonably substantiate it, then the conclusion is clearly erroneous and must be reversed.’” B.J.N. v. P.D., 742 So.2d 1270, 1274 (Ala.Civ.App.1999) (quoting Jacoby v. Bell, 370 So.2d 278, 280 (Ala.1979)).”
Cheek v. Dyess, 1 So.3d 1025, 1029 (Ala.Civ.App.2007).
Even giving proper deference to the juvenile court’s judgment, we cannot conclude that the father met the heavy burden imposed by Ex parte McLendon.
“ ‘A material change of circumstances occurs when important facts unknown at the time of the initial custody judgment arise that impact the welfare of the child. A custodial parent’s change of environment that endangers the child’s physical or emotional health, safety, or well-being constitutes a material change of circumstances.’ K.E.W. v. T.W.E., 990 So.2d 375, 380 (Ala.Civ.App.2007) (citation omitted).”
Cochran v. Cochran, 5 So.3d 1220, 1226 (Ala.2008).
There is no evidence in the record to support a finding that a material change in circumstances had occurred since the entry of the July 25, 2008, custody determination. The timing of the mother’s marriage to R.B. cannot be considered a material change in circumstances that impacted the welfare of the daughter, especially in light of evidence indicating that R.B. got along well with the daughter and that he had provided support for the daughter when the father had not. See Sherrod v. Sherrod, 361 So.2d 17, 19 (Ala.Civ.App.1978) (“The remarriage of one or both of the parties is not in and of itself such a material change of circumstances as to justify modification, but it is nevertheless a factor to be considered by the trial court.”).
There is also no evidence to support a conclusion that the welfare of the daughter was impacted by the mother’s unfulfilled desire to live with her husband in North Carolina. See Cochran v. Cochran, supra. Furthermore, although the mother had considered moving to North Carolina with the children, she later chose not do so. Also, although the accidental death of the son is concerning, there was no evidence presented by the father indicating that the actions of the mother brought about this tragedy. The mother’s testimony indicated that she had taken at least some measures to prevent a similar accident from occurring and that the mother had implemented other safety measures, such as placing a lock on the gate allowing entry to her pool.
Because a finding of a material change in circumstances is required in order to meet the custody-modification standard set forth in Ex parte McLendon, we must assume that the juvenile court did in fact determine that the mother’s environment had changed in such a way that it “ ‘endanger[ed] the child’s physical or emotional health, safety, or well-being.’” Cochran v. Cochran, 5 So.3d at 1226; see also Clements v. Clements, 990 So.2d 383, 390 (Ala.Civ.App.2007) (“[I]n the absence of specific findings of fact, an appellate court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.”). However, this court cannot reconcile such a finding with the juvenile court’s award of joint physical custody of the daughter to the father and the mother. The juvenile court’s decision to award joint custody of the daughter to *211 the parties indicates that the juvenile court believed that the mother had shown an ability to act in the best interests of the daughter. See § 30-3-150, Ala.Code 1975 (setting forth a state policy regarding joint custody “to assure that minor children have frequent and continuing contact with parents who have shown the ability to act in the best interest of their children ...(emphasis added)). The juvenile court’s award of joint physical custody to the mother leads this court to believe that there was no evidence indicating that the mother’s circumstances had changed in a way that impacted the best interests and welfare of the daughter.
Furthermore, even if the father had shown that a material change' in circumstances had occurred since the July 2008 custody determination, we . cannot find any evidence in the record to support a finding that the daughter’s best interests would be materially promoted by the change in custody. See Dean v. Dean, supra. The father presented no evidence regarding his home environment, who he lived with, where he lived, his work hours, his ability to financially provide for the daughter, or any other evidence to show why he, rather than the mother, should have custody. He also presented no evidence regarding the home environment of the mother or any other evidence that would otherwise support a finding that the daughter’s best interests would be materially promoted by an alternating joint-physical-custody arrangement. Thus, we conclude that the juvenile court’s implicit finding that the daughter’s best interests would be materially promoted by a change in custody was unsupported by the evidence. See Vick v. Vick, 688 So.2d 852, 856 (Ala.Civ.App.1997) (reversing a judgment modifying custody from the mother to the father based in part on the fact that the father had failed to present “more detailed evidence regarding the living situation available with the father and the present conditions of the mother’s home”).
Accordingly, we reverse the judgment of the juvenile court insofar as it modified custody of the daughter. Because we reverse the portion of the judgment modifying custody of the daughter, we also reverse the juvenile court’s judgment insofar as it modified child support.[5] We remand this case to the juvenile court with instructions to enter an order consistent with this opinion and to address the mother’s request to modify the May 23, 2008, child-support order.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. The father's petition reflects that the petition was verified by the father on August 1, 2008.

. The son died on August 7, 2008, shortly after his second birthday.

. On March 6, 2009, the mother filed a notice of appeal to the Talladega Circuit Court ("the circuit court") for a trial de novo because, she alleged, the juvenile court could not certify the record as adequate and the parties would not agree to stipulate to the facts. That appeal was assigned case no. CV-09-079. However, a tape recording of the November 20, 2008, ore tenus proceeding in the juvenile court was subsequently discovered. The tape recording was transcribed, the record was certified as adequate pursuant to Rule 28(A)(1)(a), Ala. R. Juv. P., and the circuit court transferred the case to this court pursuant to Rule 28(D), Ala. R. Juv. P. This case was not submitted on briefs to this court until March 22, 2010.

.Apparently, R.B.’s family also lives near the mother.

. We pretermit discussion of the mother’s remaining issue on appeal.