THOMPSON, Presiding Judge.
J.K.M. (“the father”) and T.L.M. (“the mother”) were divorced by a February 25, 2010, judgment of the Lee Circuit Court (“the trial court”). Pursuant to the divorce judgment, the parties were awarded joint legal and physical custody of the minor child born of their marriage in 2006. On January 26, 2012, the trial court entered a modification judgment that incorporated an agreement of the parties. Pursuant to the January 26, 2012, modification judgment, the father was awarded “primary” physical custody, i.e., sole physical custody, see § 30-3-151(5), Ala.Code 1975, of the parties’ child and the mother was ordered to pay $700 in child support each month.[1]
On September 16, 2013, the mother filed a petition seeking to modify her child-support obligation, alleging that her income had decreased because she had surrendered her pharmacy license and was no longer employed as a pharmacist. The father filed an answer arguing that child support should not be modified because the mother had voluntarily surrendered her pharmacy license, and he asserted a counterclaim seeking to hold the mother in contempt, alleging that the mother had failed to pay child support and had traveled with the child in violation of the terms of the January 2012 modification judgment. The father later amended his counterclaim to request that the mother’s visitation be suspended or supervised.
The mother filed an amended petition for modification in which she alleged that the current custodial arrangement had been difficult for the child and requested *934 that the day and time on which the parents exchanged custody of the child be modified to better serve the child’s interests and to promote the child’s stability. On June 4, 2014, the father again amended his counterclaim, requesting that the timing of the mother’s visitation be altered. The mother then amended her petition to seek an award of sole legal and sole physical custody of the child.
At the conclusion of a hearing held on August 28, 2014 (“the pendente lite hearing”), the trial court stated:
“[I]t is the policy of this court,, unless there is a compelling reason not to, to give as much time as possible in these situations to each parent, and for or until the court has an opportunity to look at it further, the court will order that [the child] spend seven days with one parent and seven days with the other.”
The trial court did not immediately enter an order formalizing that ruling.
On November 18, 2014, the trial court entered an order modifying custody to award joint custody of the child to the parties. See § 30-3-151(1), Ala.Code 1975. In that order, the trial court stated:
“The Court finds that there has been a material change in circumstances affecting [the child’s] welfare since the previous Order of January 26, 2012. Further, the Court finds that the positive change of this modification of physical custody is not only in [the child’s] best interest, but will more than offset any disruptive effects of the change to a shared physical custody arrangement.”
On December 2, 2014, the trial court, ex mero motu, amended its November 18, 2014, order, declaring that the order was intended to be a pendente lite order. Both parties filed what they characterized as Rule 59, Ala. R. Civ. P., postjudgment motions. See Malone v. Gainey, 726 So.2d 725, 725 n. 2 (Ala.Civ.App.1999) (“A Rule 59[, Ala. R. Civ. P,, postjudgment] motion may be made only in reference to a final judgment or order.”). The trial court denied those purported postjudgment motions.
The trial court received ore tenus evidence at a final hearing on June 25, 2015, and on August 12, 2015, it entered a judgment- making final its previous pendente lite award of joint custody of the nine-year-old child to the parties, stating: “The Court finds that maintaining joint legal and physical custody of the minor child, is not only in her best interest, but materially promotes her well-being and has more than offset any disruptive effects of the change to a shared physical custody arrangement.” The father filed a Rule 59 motion to alter, amend, or vacate the judgment. The trial court denied the father’s postjudgment motion, and the father timely appealed.
Most of the evidence was elicited at the pendente lite hearing. That evidence is as follows. The father is employed as a police officer for the City of Auburn. The mother had previously been employed as a licensed pharmacist. However, because she had tested positive for alcohol and the use of prescription drugs for which she lacked a prescription, in violation of conditions set for her by the State Board of Pharmacy, the mother surrendered her pharmacy license. The mother testified that she is currently employed at PhiMed, a company that recruits and staffs physicians, but that she does most of her work at home. She also testified that her job requires her to travel about one or two days a week throughout the state.
The mother is remarried and resides in Dadeville. The mother testified that her husband has two children from a previous relationship and that her husband travels *935 to Miami for the ten days each month that he has custody of those children. The mother stated that she goes to Miami with her husband when she does not have custody of the child and that they stay in a house they own in Miami. The mother testified that they also have a boat in Miami that they use to travel to and from the Bahamas.
The mother was questioned about her “swinging” lifestyle, which involved talking to people on the Internet and meeting up with them in Florida to trade sexual partners. The mother admitted that she and her husband had been involved with “swinging” before the pendente lite hearing but that their involvement in that lifestyle had only been intermittent and that she had ended her relationships of that nature. The mother claimed that no “swingers” ever came to her home in Dadeville. The father testified that he had learned about the mother’s “swinging” lifestyle because it had been publicized in some manner.
The mother was also questioned about her history of substance abuse. The mother stated that she first entered a rehabilitation center in 2007 because she was taking prescription opiates and Klonopin that she had stolen from the pharmacy where she was employed. The mother spent 12 weeks in an inpatient treatment facility and 3 months in a “halfway house.” In 2009, the mother tested “questionable” for alcohol, and a drug screen showed that she also tested positive for Soma, a muscle relaxer, even though the mother swore that she had never taken any Soma pills. In 2013, the State Board of Pharmacy ordered the mother undergo substance-abuse rehabilitation consisting of a 12-week program at the University of Alabama at Birmingham Hospital and a 6-month stay at a halfway house; however, the mother chose not to complete the stay at the halfway house because she did not want to be away from the child for that long. Instead, the mother surrendered her pharmacy license for a period of 30 years.
The mother testified that she had passed random drug screens since 2013 but that she continued to drink alcohol “occasionally” and that she sometimes did so in the presence of the child. The child’s guardian ad litem once went to the mother’s home for a random visit and found the mother drinking a glass of wine. The mother stated that she does not think that it is wrong for her to drink alcohol. However, she did state that she would comply if the trial court ordered her not to drink alcohol in front of the child. At the conclusion of the pendente lite hearing, the trial court ordered the mother not to drink alcohol in front of the child.
The father testified that he had filed his counterclaim seeking to suspend the mother’s visitation because of the mother’s sexual lifestyle and her alcohol and substance-abuse issues. The father also stated that he believed that the mother’s visitation should be suspended because of the amount of time it takes to travel from and father’s home to the mother’s home and because the child has to awaken earlier to prepare for school when the child stays with the mother. The mother testified that, during her visitation periods with the mother, the child had not had any “tar-dies” or problems arriving at school on time except on 1 occasion when the child had been 10 minutes late to the school for a field trip because the mother had forgotten the child’s book bag at home. The father admitted that there had not been any tardy issues since the child was in the first grade. The father also admitted that he could not point to anything that would suggest that the child was struggling or having any kind of issues.
*936 The mother testified that, during her visitation periods, the child worked on her homework during the car ride from the school to the mother’s home so that she could start playing when she arrived at the mother’s home. The father testified that the child is doing well in school and that she is involved in “Children’s Church” and a program called “Girls in Action” at Ope-lika First Baptist Church.
Both the mother and the father testified about communication problems between them. The father testified that he and the mother have communication problems because, he says, the mother has been dishonest and deceitful in the past. The mother testified that the father’s current wife had sent e-mails or telephone text messages calling the mother names and making lewd comments. The mother testified that the father and his wife have refused at times to allow her to talk to the child and that, although she had tried to telephone and text the father to try to talk to the child, she had once gone 17 days without being allowed to talk to the child except for a few minutes when the mother had seen the child at the child’s school.
The mother also testified that she had sent the child’s birthday-party invitations in the child’s book bag on a Friday when the father’s wife had lunch with the child at school. She stated that, when she had not heard from anyone by the next Monday, she sent an e-mail to the parents of all of the children she had invited, and each one told her that they had not received an invitation. One parent showed her an email from the father’s wife that stated: “The email from [the mother] about [the child’s] party is not the party I’m giving her.” The mother also testified about another incident in which the father’s wife had told the principal at the child’s school that the mother had bribed the child’s teacher. When questioned by the trial court about why the father’s wife disliked the mother, the father testified that there had been some communications from the mother and her husband after the father’s wife became pregnant in which they had stated that the father was “fathering someone else’s child.” The father stated that his wife’s attitude toward the mother was in reaction to those communications.
The father testified to some incidents involving the child that had caused him some concern about the child’s being in the mother’s care. First, the father testified about an incident when the child was observed on a Seadoo recreational watercraft on Lake Martin with another child of about the same age. The mother testified that the child had ridden on the watercraft with a 14-year-old child who had a boater’s certification and that the mother’s husband had been in a boat following them. The father testified about another incident when the child and other children were allowed to walk unsupervised from the mother’s house on Lake Martin to the marina pool, which was more than a mile away. The mother testified that her husband had followed them to the pool and that a pool attendant was present at all times at the pool. The mother testified that the father’s wife had also been at the pool and was the one who saw the children there. The father also testified that the child had injured her foot when a golf cart she was riding in with other children had overturned. He stated that the child was taken to be x-rayed and was seen by medical staff and that the father had not been notified of the incident until several days later. As to that incident, the mother stated that the child’s stepcousin was driving the golf cart and that the golf cart had overturned when it “caught the lip of the road.” The mother stated that the child had scraped and bruised her foot but that she had not suffered any broken bones or sprains.
*937 At the final hearing, the parties presented substantially the same evidence that had been presented at the pendente lite hearing with the exception of the following additional evidence. The father stated that he and his wife have a two-year-old child and that they reside in a house in Auburn that he has owned since 2003. The father testified that he earns approximately $50,000 each year as a police officer, and he stated that his wife is employed as a legal secretary.
The mother stated that she earned $39,000 in 2014. The mother explained that her job duties include scheduling, accounting, bookkeeping, recruiting, and “really [taking] care of all the physicians and the nurse practitioners.” Although the mother had surrendered her pharmacy license, she testified that it was possible for her to obtain a pharmacy license again in 30 years but that it was “more convenient” for her to do the job she had at the time of the hearing instead. The mother also testified that she often travels.[2]
The mother testified that she takes Wellbutrin, an anti-depressant and anti-anxiety medication, and that she continues to drink alcohol even while taking that medication. The mother was again questioned about the “swinging” she had done in the past, and she testified that she did not think that that lifestyle would have any impact on the child and that the only reason she had not returned to that lifestyle was because the trial court did not approve of it.
Upon the mother’s release from her first stay in rehabilitation in 2007, the State Board of Pharmacy had required her to submit to “monitoring” in order to keep her pharmacy license. The mother testified that she had participated in a substance-abuse program in 2013 only because she had been ordered to participate by the State Board of Pharmacy. The father testified that the mother did not tell him that she had entered substance-abuse treatment again in 2013 and that there had been a period during the mother’s stay in that program when he had believed that the child was with the mother when the child was actually staying with someone else.
The mother stated that she had been attending counseling once every three weeks since June or July 2013 for her alcohol and substance abuse, as well as for life issues such as dealing with the father and his wife. The mother stated that the counseling was court-ordered and that she had to attend until the counselor believed that it was no longer necessary.
The father testified that he had seen changes in the child’s behavior that he attributed to the mother’s influence; he stated that the child would now tell a lie and not think anything about it. The father stated that the child had also told him that the mother had told the child that there were things they did not need to tell the father.
The mother again testified about the communication problems she had with the father. She stated that she had had problems gaining access to the parent portal used to access information concerning the child’s education during the last school year and that the father had told her “why don’t you just find out for yourself’ when she asked him about it.
The father testified that he believed that the mother still drank alcohol in front of *938 the child even after the trial court entered the November 19, 2014, pendente lite order forbidding the mother from doing so because, he said, the child had told him about a colorful and “big beautiful drink” the mother had had and that the mother would not let her drink any of it even though the child had wanted to try it. The father stated that he and his wife sometimes drank alcohol in front of the child.
On appeal, the father argues that the trial court erred in modifying custody of the child. Specifically, the father argues that, because he had sole physical custody of the child, the mother was required to meet the burden of proof for a modification of custody set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984), and that the trial court erred in determining that the mother had met that burden.
“[W]here the parents have joint legal custody, but a previous judicial determination grants primary custody to one parent and secondary custody to the other, ‘the trial court [is] correct in applying the McLendon standard and requiring the [parent] to show that a change in custody would materially promote the welfare and best interests of the child, offsetting the disruptive effect of uprooting the child.’ ”
Scholl v. Parsons, 655 So.2d 1060, 1062 (Ala.Civ.App.1995) (quoting Blackmon v. Scott, 622 So.2d 393, 394 (Ala.Civ.App.1993)).
“Under Ex parte McLendon, a final judgment awarding one parent primary physical custody of a child creates a ‘rule of repose’ by which it is presumed that the child should remain in the custody of that parent unless and until a material change of circumstances indicates that the positive good to the child resulting from a transfer of physical custody would outweigh the inherently disruptive effects of such a change. 455 So.2d at 865 (quoting Wood v. Wood, 333 So.2d 826, 828 (Ala.Civ.App.1976)). The noncustodial parent, as defined by the last ‘final’ custody judgment, bears the burden of meeting the McLendon standard, even if that parent has gained temporary custody of the child pursuant to a pendente lite order. It is reversible error for a trial court to relieve the noncustodial parent of that burden based on its pendente lite custody award.”
McCulloch v. Campbell, 60 So.3d 909, 916 (Ala.Civ.App.2010). The standard of review in a case involving the modification of child custody is well established:
“‘“Our standard of review is very limited in cases where the evidence is presented ore tenus. A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, Payne v. Payne, 550 So.2d 440 (Ala.Civ.App.1989), and Vail v. Vail, 532 So.2d 639 (Ala.Civ.App.1988), and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court’s discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow. Gamble v. Gamble, 562 So.2d 1343 (Ala.Civ.App.1990); Flowers v. Flowers, 479 So.2d 1257 (Ala.Civ.App.1985).” ’ ”
Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996) (quoting Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994), quoting in turn Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993)),
In support of her custody-modification claim, the mother was required to show that material changes that affect the child’s welfare had occurred since the entry of the January 26, 2012, modification *939 judgment and that the benefits of the change in custody would outweigh the inherently disruptive effect of such a change.[3] Ex parte McLendon, 455 So.2d at 865. The evidence indicates that the father has resided in the same home that is located in the child’s school district since 2003. The mother admitted that the child was currently doing well in school, was making good grades, and had no behavioral problems. The mother admitted that there had been no issues or problems with the child, and she did not identify any areas in which she contended that the father was not properly caring for the child.
The evidence in the record indicates that both parents love the child. The child is being appropriately cared for in the home of the father, and the mother did not identify any concerns with regard to the father’s having sole physical custody of the child. Rather, she presented evidence in support of her contention that, in the last few years, she had improved her own situation by no longer abusing prescription medications. Although we applaud the mother for the improvements in her circumstances, those improvements are not sufficient to warrant a change of custody under the McLendon standard.
“It is not enough that the parent show that she has remarried, reformed her lifestyle, and improved her financial position. Carter v. Harbin, 279 Ala. 237, 184 So.2d 145 (1966); Abel v. Hadder, 404 So.2d 64 (Ala.Civ.App.1981). The parent seeking the custody change must show not only that she is fit, but also that the change of custody ‘materially promotes’ the child’s best interest and welfare.”
Ex parte McLendon, 455 So.2d at 866.
The child’s guardian ad litem recommended that the child spend equal time with the mother and the father because, she said, it was her belief that spending equal time with both parents would be in the child’s best interests. The guardian ad litem also stated that the nine-year-old child wished to spend equal time with the mother and the father. However, although the preference of the child is a factor a trial court may consider with regard to custody, it is not controlling. Dean v. Dean, 998 So.2d 1060, 1065 (Ala.Civ.App.2008).
After reviewing the record, we conclude that the evidence the mother presented was simply not sufficient to show either a material change in circumstances or that a change in custody would materially promote the child’s best interests. Because the mother failed to introduce sufficient evidence to meet the Ex parte McLendon standard, the trial court’s judgment modifying custody to award the parties joint custody is reversed, and we remand the cause to the trial court for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN, THOMAS, and MOORE, JJ., concur.
DONALDSON, J., concurs specially.

. For the purposes of this opinion, we have characterized the custodial awards as those awards are properly defined in § 30-3-151, Ala.Code 1975.

. The mother had been to New York City; Europe; Miami; Vail, Colorado; California; and New Orleans during the year preceding her deposition in this case, and she had since traveled to Vancouver, British Columbia; Salt Lake City, Utah; Jackson Hole, Wyoming; New York; Texas; the Bahamas; and Miami.

. Although the parties had been exercising joint custody of the child since the November 18, 2014, pendente lite order was entered, this court has previously held that "custody may not be changed on a pendente lite basis solely to experiment with custody.” McCulloch v. Campbell, 60 So.3d at 918.