THOMPSON, Presiding Judge.
On July 10, 2015, S.L. ("the paternal grandmother") filed in the Fayette Juvenile Court ("the juvenile court") a petition alleging that R.T.N., the minor child of K.N. ("the father") and J.S. ("the mother"), was dependent and seeking an award of custody of the child. That action was assigned case number JU-15-43.01 ("the .01 action"). The juvenile court entered an order in the .01 action on July 10, 2015, *122 that awarded the paternal grandmother pendente lite custody of the child.
The juvenile court conducted a hearing in August 2015. The record contains an unsigned, handwritten order in the .01 action, to which the juvenile court later referred as having been "entered," that stated that "temp. custody" was awarded to the paternal grandmother on "08/19/2015." On August 19, 2015, the juvenile court rendered a separate order in the .01 action in which it found the child to be dependent and awarded "temporary custody" to the paternal grandmother. That order is date-stamped as having been filed in the juvenile-court clerk's office on August 31, 2015. However, the clerk of the juvenile court did not enter that order on the case-action summary until January 6, 2016. The order became effective upon its entry on the case-action summary. Rule 58, Ala. R. Civ. P.; D.J.G. v. F.E.G., 91 So.3d 69, 73 (Ala. Civ. App. 2012) ; and Dudley v. State Dep't of Human Res., 555 So.2d 1121, 1122 (Ala. Civ. App. 1989).
On January 22, 2016, the mother filed in the .01 action a "counter-petition" seeking the return of custody of the child. The record indicates that the mother's January 22, 2016, petition was treated as a modification petition that initiated a new action, and the juvenile court reassigned that action case number JU-15-43.02 ("the .02 action").
Comments by the parties and the juvenile court during the hearing on the merits of the .02 action indicate that the father also filed a petition seeking the return of custody of the child, and his action was assigned case number JU-15-43.03 ("the .03 action"). The record contains no documents or orders from the .03 action. The father is not a party to these appeals, and this opinion sets forth facts pertaining to the father only as they relate to the issues raised in the mother's appeals.
The juvenile court conducted an ore tenus hearing regarding the .02 action and the .03 action on September 21, 2016.[1] On December 19, 2016, the juvenile court entered a judgment in the .02 action in which it determined that the child remained dependent and denied the mother's petition for the return of custody of the child.
The mother filed a postjudgment motion on December 30, 2016, that indicated it was filed in reference to the .01 action and the .02 action. That motion, as it pertained to the .02 action, was deemed denied by operation of law, pursuant to Rule 59.1, Ala. R. Civ. P., Rule 1(B), Ala. R. Juv. P., and Rule 4(a)(1), Ala. R. App. P., on January 13, 2017. The mother timely appealed the judgment entered in the .02 action on January 26, 2017. Rule 4(a)(1), Ala. R. App. P.; Rule 28(C), Ala. R. Juv. P. This court assigned that appeal number 2160282.
However, the mother's appeal in appeal number 2160281, which is taken in the .01 action, is not timely. The juvenile court's initial dependency order, rendered on August 19, 2015, but not entered until January 6, 2016, ("the January 6, 2016, order") was sufficiently final to support an appeal. The mother has incorrectly referred to that order as a "pendente lite" order in asserting her arguments in her appellate brief. This court has explained the difference between a pendente lite custody award and an award of temporary custody as follows:
" 'A pendente lite custody order is an order that is effective only during the pendency of the litigation in an existing case and is usually replaced by the entry of a final judgment.
*123 Hodge v. Steinwinder, 919 So.2d 1179, 1182 (Ala. Civ. App. 2005). Pendente lite custody orders allow a trial court to take into consideration developments in the lives of the child and the parties that naturally occur during the gap in time between the filing of an action and the final hearing in the matter. Id.
" 'However, a "temporary custody award" or a "temporary order" as to custody is a "final" custody award or judgment. Despite its name, a temporary order as to custody is intended to remain effective until a party seeks to modify it. It may be modified if the trial court reviews the case and determines that changed circumstances that warrant a modification have come into existence since the last custody award. 919 So.2d at 1182-83. Such an award is not a pendente lite award. Id.'
" T.J.H. v. S.N.F., 960 So.2d 669, 672 (Ala. Civ. App. 2006)."
P.A. v. L.S., 78 So.3d 979, 981 (Ala. Civ. App. 2011).
This court has recently held that "[a]n order is final and appealable if it contains a formal dependency determination coupled with a temporary order of custody that is incidental to that determination and subject to further review." A.J. v. E.W., 167 So.3d 362, 366 (Ala. Civ. App. 2014). In this case, the juvenile court, in the January 6, 2016, order, awarded temporary custody to the paternal grandmother after finding the child dependent. Accordingly, we conclude that order was sufficiently final to support an appeal of that order, see A.J. v. E.W., supra, and that it constituted an award of temporary custody of the child. P.A. v. L.S., supra.
The mother did not timely appeal the January 6, 2016, order within the 14 days allowed by Rule 4(a)(1), Ala. R. App. P., and Rule 1, Ala. R. Juv. P. The mother's December 30, 2016, postjudgment motion was not filed within 14 days of the entry of that order, see Rule 1(B), Ala. R. Juv. P., and, therefore, it did not operate to extend the time for taking an appeal. We therefore dismiss the mother's January 26, 2017, appeal in appeal number 2160281, which was filed in reference to the January 6, 2016, order entered in the .01 action.
The mother first argues on appeal that the juvenile court erred in awarding the paternal grandmother pendente lite custody in its July 10, 2015, order entered in the .01 action. However, a pendente lite order cannot support an appeal, and it does not become appealable upon the entry of a final order or judgment. Morgan v. Morgan, 183 So.3d 945, 966 (Ala. Civ. App. 2014) ; see also Ex parte J.P., 641 So.2d 276, 278 (Ala. 1994) ("Pendente lite orders are generally entered only during the pendency of the litigation and are usually replaced by a final order or judgment that is entered at the end of the litigation."). The mother may not obtain review of the July 10, 2015, pendente lite order in this appeal.
The mother argues that the procedural and notice issues she raised in her appellate brief concerning the July 10, 2015, pendente lite order were not "cured" by the manner in which the juvenile court conducted the August 19, 2015, dependency hearing.[2] The mother's argument focuses on the August 19, 2015, hearing, and not on an order entered by the juvenile court; that argument seems to pertain to her contention that she should have received notice before the entry of the July 10, *124 2015, order. Further, the mother failed to timely appeal the January 6, 2016, order that was based on the evidence presented at the August 19, 2015, dependency hearing. Accordingly, we do not reach those arguments.
The mother next argues that the juvenile court improperly determined that the mother had the burden of proof in seeking to regain custody of the child in the .02 action. In its December 19, 2016, judgment in the .02 action, the juvenile court found that the mother had failed to meet the standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala. 1984). The mother also raises two additional arguments, both of which relate to her argument concerning the burden of proof. Specifically, the mother contends that the juvenile court failed to presume that she had a prima facie right to custody of the child and that the juvenile court erred in determining that she had to meet the McLendon standard in order to regain custody of the child. Those arguments are interrelated, and we address them together.
In making her arguments on those issues, the mother contends that the January 6, 2016, order was a pendente lite order and did not constitute a final order that would warrant the filing of a modification action in order for her to regain custody and that would not require her to meet the McLendon standard to regain custody. As has already been explained in this opinion, however, the January 6, 2016, order was a "temporary order" that was sufficiently final to support an appeal and to trigger the application of the McLendon standard to a modification action. A.J. v. E.W., supra ; P.A. v. L.S., supra.
Further, the mother's argument on appeal is different from her position during the hearing on the merits. At the beginning of the September 21, 2016, hearing, the mother's attorney asked the juvenile court which party had the burden of proof. The juvenile court responded by saying that the mother's petition was, in essence, a petition to modify and that the mother needed to meet the Ex parte McLendon standard by showing a material change in circumstances and that the change would promote the child's best interests. The mother's attorney agreed with that statement.[3] Thus, at the September 21, 2016, hearing, the mother conceded that she had the burden of meeting the McLendon standard. The mother first argued that the McLendon standard did not *125 apply under the facts of this case in her December 30, 2016, postjudgment motion; the mother reiterates those arguments in her brief filed in this court. However,
"[t]he law is well settled that a party may not induce an error by the trial court and then attempt to win a reversal based on that error. 'A party may not predicate an argument for reversal on "invited error," that is, "error into which he has led or lulled the trial court.'' ' Atkins v. Lee, 603 So.2d 937, 945 (Ala. 1992) (quoting Dixie Highway Express, Inc. v. Southern Ry., 286 Ala. 646, 651, 244 So.2d 591, 595 (1971) ). 'That doctrine [of invited error] provides that a party may not complain of error into which he has led the court.' Ex parte King, 643 So.2d 1364, 1366 (Ala. 1993). 'A party cannot win a reversal on an error that party has invited the trial court to commit.' Neal v. Neal, 856 So.2d 766, 784 (Ala. 2002). See also Liberty Nat'l Life Ins. Co. v. Beasley, 466 So.2d 935, 937 (Ala. 1985) ; State Farm Mut. Auto. Ins. Co. v. Humphres, 293 Ala. 413, 418, 304 So.2d 573, 577 (1974).''
Mobile Infirmary Med. Ctr. v. Hodgen, 884 So.2d 801, 808 (Ala. 2003).
In Mobile Infirmary, supra, Mobile Infirmary Medical Center had initially argued before the trial court that a jury verdict was proper but had then argued in postjudgment filings that the judgment entered on that verdict was improper and that it was entitled to a judgment in its favor. Our supreme court concluded that "any error committed by the trial court in entering a judgment upon the jury verdict in this case was invited by Mobile Infirmary" and that Mobile Infirmary could not later argue against the correctness of that judgment. 884 So.2d at 808. See also Kaufman v. Kaufman, 22 So.3d 458, 464 (Ala. Civ. App. 2007) (concluding that the wife had invited the error of which she complained on appeal when she "first raised an objection to the trial court's receiving additional evidence in her postjudgment motion and on appeal, after the trial court had entered a judgment that she felt was adverse to her").
In this case, the mother agreed before the juvenile court during the September 21, 2016, hearing that the McLendon standard applied and established her burden in her modification action. Thus, as in Mobile Infirmary, supra, and Kaufman v. Kaufman, supra, the mother in this case invited the error of which she now complains. Accordingly, we decline to reverse the trial court's judgment based on her current arguments.[4]
The mother last argues that the juvenile court erred in denying her claim seeking a return of custody of the child. The mother maintains that the evidence does not support the juvenile court's finding that the mother did not meet the McLendon standard. "Under the McLendon rule, the appropriate standard is whether a change in custody would materially promote the welfare of the child." Ex parte J.P., 641 So.2d at 278.
In addition to the child at issue, the mother has another child ("the half sibling), who is older than the child at issue and who is in the custody of the child and the half sibling's maternal great-grandmother.[5] The mother lost custody of the half sibling approximately a year before *126 the August 19, 2015, dependency hearing regarding the child in the .01 action as a result of an investigation, conducted by the Fayette County Department of Human Resources ("DHR"), into the mother's ability to parent the half sibling because of the mother's use of illegal drugs. At the August 19, 2015, dependency hearing, the mother admitted that she had not complied with DHR's reunification goals regarding the half sibling, such as attending a substance-abuse rehabilitation program or cooperating with services offered through "the FOCUS program." The mother lived near her grandmother and the half sibling, and she saw them daily.
At the August 19, 2015, dependency hearing, the mother explained that she lived in a mobile home owned by the child's maternal great-grandmother. That mobile home is located near the home of the maternal great-grandmother, as well as to the homes of the maternal grandparents and the mother's brother. The mother and the father resided together, with the child, at that mobile home for a few months following the child's birth in May 2015. The mother testified at the August 19, 2015, dependency hearing that she was unemployed and dependent on her family members for her support.
The paternal grandmother testified that the father telephoned her on July 10, 2015, to inform her that he and the mother had ended their relationship and to ask her to retrieve the child. She testified that the father had informed her that he and the mother had used illegal drugs together.[6] According to the paternal grandmother, at the time of the August 19, 2015, dependency hearing, the father was incarcerated because he had not been able to pass drug screens that were a condition of his probation.
The mother testified at the August 19, 2015, dependency hearing that she had stopped using illegal drugs, and she stated that she had passed two drug screens, which apparently were required in the action pertaining to the half sibling. The mother admitted, however, that she had last tested positive for drugs "a month ago," but then she stated that she had been "clean" for eight months and had failed the drug test in April 2014. The maternal grandmother testified on behalf of the mother and stated that she did not believe that the mother was using drugs, and she stated that the mother could properly parent and support the child with the assistance of family members.
At the conclusion of the dependency hearing, the juvenile court found the child dependent. The juvenile court also announced its intention to require the mother to comply with the DHR reunification goals in the action pertaining to the half sibling.
With regard to the modification action, and whether the evidence demonstrates a material change in circumstances since the entry of the January 6, 2016, order sufficient to meet the McLendon standard, the record reveals the following evidence. The mother testified that, at the time of the September 21, 2016, hearing, she was living in the maternal great-grandmother's home with the maternal great-grandmother; the half sibling, of whom the maternal great-grandmother still had custody; and the mother's three-month-old infant daughter. The maternal great-grandmother's home has three bedrooms, *127 [7] and both the mother and the maternal great-grandmother testified that the home was appropriate for the child and could accommodate the mother, the maternal great-grandmother, and the mother's two other children.
The mother testified that she has been unemployed for two or three years. The mother stated that she had started, in the week before the September 21, 2016, hearing, to babysit for her cousin and that she would be paid $50 per week for doing so. The mother also testified that her mother pays her approximately $350 per month to help her with things such as house cleaning, and that she receives public assistance in the forms of food stamps and vouchers through the Women, Infants, and Children Assistance Program. The mother testified that she was capable of supporting the child, as well as her other two children, given her income and additional support from her family, if needed.
The mother testified that she had completed parenting classes in compliance with the juvenile court's order requiring that she work toward DHR's reunification goals in the action pertaining to the half sibling. The mother testified that DHR had not asked her to submit to drug screens, and she testified that she did not use illegal drugs.
A great deal of the testimony in the modification action concerned the allegations in the paternal grandmother's .01 action. The mother denied that she had used drugs during her pregnancy with the child or after the child was born. The father testified, however, that the mother had used both methamphetamine and marijuana during her pregnancy with the child and that both parents had used illegal drugs with members of the mother's extended family. The mother briefly testified in rebuttal to the father's testimony and again denied that she had used illegal drugs during her pregnancy with the child.
Much of the mother's argument on appeal is dedicated to attacking the credibility of the paternal grandmother and the father. We note that the father testified in support of his claim for custody of the child in the .03 action and that this court has set forth only that testimony of the father that touched on facts that might be pertinent to the juvenile court's denial of the mother's claim for custody. This court has stated:
" 'Generally, a trial court's custody determination following the presentation of ore tenus evidence is presumed correct and that judgment will not be set aside on appeal absent a finding that the trial court abused its discretion or that its determination is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060 (Ala. Civ. App. 1995). However, where a trial court bases its custody determination on an improper custody-modification standard, that judgment is due to be reversed. See generally B.S.L. v. S.E., 826 So.2d 890 (Ala. Civ. App. 2002).' "
M.B. v. S.B., 12 So.3d 1217, 1219 (Ala. Civ. App. 2009) (quoting C.A.M. v. B.G.H., 869 So.2d 507, 508 (Ala. Civ. App. 2003) ).
The juvenile court found the child dependent and transferred custody of the child to the paternal grandmother in the January 6, 2016, order, and the mother did not appeal that order. With regard to the modification action, the juvenile court received *128 evidence indicating that the child continues to be well cared for in the paternal grandmother's home. The mother presented evidence tending to indicate that she no longer uses illegal drugs, that she lives in a stable home with the maternal great-grandmother and the mother's other two children, and that her family is willing to continue to provide support for her, both financially and emotionally. We applaud the improvements in the mother's circumstances. However, those improvements are not sufficient, in themselves, to meet the McLendon standard. J.K.M. v. T.L.M., 212 So.3d 931, 939 (Ala. Civ. App. 2016).
" 'It is not enough that the parent show that she has remarried, reformed her lifestyle, and improved her financial position. Carter v. Harbin, 279 Ala. 237, 184 So.2d 145 (1966) ; Abel v. Hadder, 404 So.2d 64 (Ala. Civ. App. 1981). The parent seeking the custody change must show not only that she is fit, but also that the change of custody "materially promotes" the child's best interest and welfare.' "
J.K.M. v. T.L.M., 212 So.3d at 939 (quoting Ex parte McLendon, 455 So.2d at 866 ). Given the evidence in the record on appeal, we cannot say that the mother has demonstrated that the juvenile court erred in denying her claim in the .02 action seeking a return of custody of the child. Therefore, in appeal number 2160282, the juvenile court's judgment is affirmed.
2160281-APPEAL DISMISSED.
2160282-AFFIRMED.
Pittman and Donaldson, JJ., concur.
Thomas and Moore, JJ., concur in the result, without writings.

The record contains no indication that the two actions were consolidated.

The January 6, 2016, order was based on the evidence presented at that August 19, 2015, hearing.

The relevant portion of the transcript reads as follows:
"[MOTHER'S ATTORNEY]: Yes, sir. Let me ask a better question. I assume that by pursuing our counter petition in the .02 case and responding to the evidence submitted in the .03 that will deal with all the issues in the .01 case?
"THE COURT: Well, I would assume yes. I would think-what are you trying to get into?
"[MOTHER'S ATTORNEY]: I'm just trying to establish-apparently we have the burden of proof on our counter petition.
"THE COURT: That's true.
"[MOTHER'S ATTORNEY]: But we were not the movant in this whole sequence of events. The child was taken from us on a petition.
"THE COURT: That's true.
"[MOTHER'S ATTORNEY]: So I'm just trying to establish by meting out will that resolve the matters in the summer of 2015 as well?
"THE COURT: I don't know because-somebody may want to speak to this, but as I understand the law is this much like a petition to modify. There has to be a change of circumstance, material change of circumstances since then.
"[MOTHER'S ATTORNEY]: Okay. I'm trying to establish what my burden might be.
"THE COURT: I think it is that you have a burden to show that there's been a material change in circumstance, and further, I mean, the McLendon standard may come into effect, but further always the polestar is the best interests of the child.
"[MOTHER'S ATTORNEY]: Yes, sir. I would agree with that."

To the extent that the mother contends that she had a prima facie right to custody of the child, we note that presumption does not apply when an earlier order or judgment awards custody to a nonparent. Ex parte McLendon, 455 So.2d at 865.

Shortly before the September 21, 2016, hearing on the mother's modification petition, the mother gave birth to her third child.

We note that, during both the August 19, 2015, dependency hearing and the September 21, 2016, hearing, the mother objected only occasionally to the introduction of hearsay evidence, and this opinion has set forth evidence to which the mother did not object or to which the juvenile court did not sustain an objection.

In her testimony, the mother initially stated that the home had two bedrooms, but she later testified that she, the maternal great-grandmother, and the half sibling each had her own bedroom. The maternal great-grandmother's testimony indicated that her home has three bedrooms.