Rel: April 4, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

## CL-2024-0639

_____

## S.B.

## v.

## N.C.

### Appeal from Madison Juvenile Court
### (CS-23-900248)

PER CURIAM.

S.B. ("the mother") appeals from an amended judgment of the Madison Juvenile Court ("the juvenile court") denying the mother's postjudgment motion without a hearing. We reverse the juvenile court's amended judgment and remand the cause with instructions.

## Background

The mother and N.C. ("the father"), who are not married, were living together in 2021 when the mother gave birth to P.A.C. ("the child"). The parties ended their relationship in January 2023, and the mother moved out of the father's house in March 2023.

In June 2023, the father commenced an action seeking a judgment adjudicating him the legal father of the child, awarding him and the mother joint custody of the child, awarding him final decision- making authority with respect to all issues pertaining to the child, establishing the amount of his child-support obligation, and granting him the right to claim the child as a dependent on his state and federal income-tax returns. In July 2023, the mother answered the father's petition with a general denial.

Thereafter, the mother filed a counterclaim seeking a judgment awarding her sole physical custody of the child, awarding the parties joint legal custody, awarding her child support, ordering the father to continue to provide health insurance for the child, ordering the parties to each pay one-half of the child's medical expenses that are not covered by insurance, and authorizing each party to claim the child as a dependent for income-

tax purposes in alternating years. In August 2023, the father filed a reply to the mother's counterclaim.

In October 2023, the juvenile court appointed a guardian ad litem to protect the interests of the child. In November 2023, the Alabama Department of Human Resources ("DHR") filed a motion to intervene in the action. In its motion, DHR alleged that the mother had assigned DHR her right to collect child support and sought an order permitting it to intervene for the purpose of establishing and collecting child support. The juvenile court granted DHR's motion.

In January 2024, the mother filed an amended counterclaim. In her amended counterclaim, the mother requested that the juvenile court authorize her to claim the income-tax dependency exemption for the child every year and that the juvenile court allocate responsibility for the child's medical expenses that are not covered by insurance in accordance with each parent's proportionate share of the parties' combined gross monthly income. The father moved the juvenile court to strike the mother's amended counterclaim because, he said, the mother had filed it without first obtaining leave from the juvenile court to do so and because,

he said, the mother had not timely filed it. The juvenile court granted the father's motion to strike the mother's amended counterclaim.

The juvenile court tried the action on June 12, 2024. The father testified that he had voluntarily paid the mother child support since she moved out of his house in March 2023 and that the average amount of those payments was $1,532 per month. He said that he was currently employed by Northrup Grumman and that his current gross income from his employment was $12,049 per month. He also testified that, in 2023, he had withdrawn a gross amount of $79,931 from a 401(k) retirement account sponsored by a previous employer and that, with the funds withdrawn from the 401(k) account included, his gross monthly income in 2023 was $15,577. The father introduced his 2023 federal and state income-tax returns into evidence. Those returns indicate that, for the year 2023, the father reported $126,058 in gross income from his salary and $79,931 in gross income from his withdrawal of the funds in his 401(k) account.

In addition, the father said that he was the sole owner and sole employee of a company ("the metal-fabrication company") that fabricated metal parts to be used to modify automobiles. The father testified that

4

the metal-fabrication company had never been profitable. He admitted that he had been paid in cash for some of the work that the metal-fabrication company had performed and that he had not reported those cash payments on his income-tax returns for 2021 and 2022; however, he testified that he had reported all the cash payments that the company had received in 2023 on his 2023 income-tax returns. Those returns indicate that the father reported that the metal-fabrication company had a net loss of $21,397 in 2023. The father admitted that he had represented on a loan application in December 2022 that the metal-fabrication company's "annual sales" were $24,000, but, he said, that was merely a projection of anticipated sales and that it had proved to be an overestimate. He said that the company had never had a profit of $24,000.

The father testified that he had provided the child's health insurance, that the cost of that insurance was $320 per month, and that he wanted to continue providing that insurance in the future. The father said that he would like to pay the child's child-care expenses of $725 per month. He testified that the amount of child-care costs that could be considered for purposes of computing child support was capped at $611

per month. The father introduced a Form CS-42 Child Support Guidelines form, see Rule 32, Ala. R. Jud. Admin., indicating that $893 per month was the amount of child support that he would owe based on the parties' 2023 incomes. On that form, he listed his gross monthly income as $12,049 and the mother's gross monthly income as $5,442.

The mother introduced a Form CS-41 Child Support Obligation Income Statement/Affidavit stating that her gross monthly income during her last year of employment was $31.40 per hour, which, according to her Form CS-41, equaled approximately $5,400 to $5,500 per month. She testified that she had 12 years of experience as a paralegal; that, when she was last employed, she earned gross income in the amount of $5,442.25 per month; and that she was currently unemployed. She testified that she wanted the juvenile court to divide the parties' responsibility for paying the child's medical expenses that were not covered by insurance in accordance with each party's proportionate share of their combined gross income. In a colloquy during the trial, the juvenile court, the parties' counsel, and the mother discussed the allocation of the income-tax dependency exemption for the child. During that colloquy, the father's counsel pointed out that the mother's counterclaim had

requested that the juvenile court authorize each party to claim that exemption in alternate years. The mother then stated to the juvenile court that she wanted it to allocate the income-tax dependency exemption for the child in accordance with Rule 32.

On August 1, 2024, the juvenile court entered a judgment adjudicating the father the child's legal and biological father; awarding the mother sole physical custody of the child; awarding the father standard visitation; dividing the final decision-making authority regarding the child's activities, education, and medical and dental care between the parties; awarding the mother child support in the amount of $893 per month; and authorizing each party to claim the child as a dependent for income-tax purposes in alternating years. On August 9, 2024, the mother filed a Rule 59, Ala. R. Civ. P., motion for a new trial and requested a hearing regarding that motion. As one of the grounds of her Rule 59 motion, the mother contended that, by awarding her child support in the amount of $893 per month and authorizing the father to claim the child as his dependent for income-tax purposes every other year, the juvenile court had deviated from the guidelines of Rule 32

7

without complying with the requirement of Rule 32 that it explain why such a deviation was justified.

On August 14, 2024, before the juvenile court had ruled on her postjudgment motion, the mother filed a notice of appeal from the juvenile court's judgment to the Madison Circuit Court ("the circuit court"). Also on August 14, the mother filed a notice of appeal from the juvenile court's judgment to this court. After the mother had filed her notices of appeal on August 14, the juvenile court, later that same day and without holding a hearing, entered an amended judgment that stated, in pertinent part, that the child-support award of $893 was in accordance with the Rule 32 guidelines because, the juvenile court said, the father "[wa]s to be responsible for payment of childcare." The juvenile court also entered an order on August 14 that found that there was an audio recording of the trial that, when transcribed, would provide a record that was adequate for appellate review and ordered a court reporter to transcribe the recording. After the juvenile court had found that transcription of the audio recording of the trial would provide a record that was adequate for appellate review, the circuit court, on August 14, transferred the mother's appeal to this court.

8

## Standard of Review

"'Actions concerning child support, although guided by the mandatory application of Rule 32[, Ala. R. Jud. Admin.], are still committed to the sound discretion of the trial court, and its decision on such matters will not be disturbed on appeal absent an abuse of discretion.'" Preda v. Preda, 877 So. 2d 617, 621 (Ala. Civ. App. 2003) (quoting Hamilton v. Hamilton, 647 So. 2d 756, 758 (Ala. Civ. App. 1994)).

## Analysis

As a threshold matter, the mother contends that the filing of her notices of appeal on August 14, 2024, deprived the juvenile court of jurisdiction to enter the amended judgment later that same day. However, Rule 4(a)(5), Ala. R. App. P., provides that a notice of appeal filed after the entry of a judgment but before the disposition of all postjudgment motions shall be held in abeyance until all postjudgment motions are either timely ruled upon or denied by operation of law. See K.M. v. S.R., 326 So. 3d 1062, 1063 (Ala. Civ. App. 2020). Therefore, the filing of the mother's notices of appeal did not deprive the juvenile court of jurisdiction before it entered the amended judgment.

9

Turning to the substantive merits of the mother's appeal, we find the dispositive issue to be whether the juvenile court's failure to hold a hearing regarding the mother's postjudgment motion, despite her having requested such a hearing, constituted reversible error. Denial of a Rule 59 motion without a hearing is reversible error if the movant requested a hearing and there was probable merit to the motion. See Blackburn v. Blackburn, 794 So. 2d 1197, 1198-99 (Ala. Civ. App. 2001).

In her postjudgment motion, the mother argued, among other things, that the juvenile court erred by authorizing the father to claim the income-tax dependency exemption for the child in alternate years because, she said, that was a deviation from the Rule 32 guidelines and the juvenile court did not explain why that deviation was justified. In A.M.B. v. J.M.S., 12 So. 3d 1221, 1222 (Ala. Civ. App. 2009), this court held that, under the Rule 32 guidelines, the custodial parent is ordinarily the proper party to be allocated income-tax dependency exemptions for the child or children in his or her custody, although a trial court has discretion to deviate from the guidelines and to make a different allocation if the trial court enters a written finding, supported by the evidence, that the application of the guidelines would be unjust or

10

inequitable. See Rule 32(A)(ii)(1)(e), Ala. R. Jud. Admin.; and Comment to Amendments effective January 1, 2009 ("The schedule of basic child-support obligations assumes that the custodial parent will take the federal and state income-tax exemptions for the children in his or her custody[.]").

In the present case, the juvenile court deviated from the Rule 32 guideline requiring that the income-tax dependency exemption be allocated to the mother only, but it failed to make a written finding that the application of that guideline in this instance would be unjust or inequitable. The failure to make such a written finding likely constitutes reversible error. See Hallum v. Hallum, 893 So. 2d 1192, 1196 (Ala. Civ. App. 2004).

The father and DHR argue that any such error by the juvenile court in this regard was invited by the mother's counterclaim, which requested that the juvenile court authorize each party to claim the income-tax dependency exemption for the child in alternating years. We conclude that that doctrine, which provides that a party may not induce an error by the trial court and then attempt to win a reversal based on that error, see J.L. v. S.L, 244 So. 3d 120, 125 (Ala. Civ. App. 2017), has no

11

application in this case. After she filed her counterclaim, the mother filed an amended counterclaim, stricken at the father's behest, in which she requested that the juvenile court authorize her to claim the income-tax dependency exemption for the child every year. Later, during a colloquy at trial regarding the allocation of the income-tax exemption for the child, the mother stated on the record that she wanted the juvenile court to allocate the income-tax dependency exemption for the child in accordance with Rule 32. Thus, despite the request in the mother's original counterclaim, the mother made it clear, through both her attempt to amend her counterclaim and her statements in open court, that she wanted the juvenile court to allocate that exemption in accordance with Rule 32. As a result, we conclude that the mother did not induce the juvenile court to potentially err by authorizing each party to claim the exemption in alternate years without making a written finding that applying the Rule 32 guideline would be unjust or inequitable.

Conclusion

Accordingly, we conclude that at least one of the grounds asserted in the mother's postjudgment motion was probably meritorious and, as a result, that the juvenile court committed reversible error by failing to

hold a hearing on that motion. See Blackburn, 794 So. 2d at 1198-99 (reversing a trial court's judgment for its failure to hold a hearing on the appellant's postjudgment motion when the trial court had deviated from the Rule 32 guidelines without stating why application of the guidelines would be unjust or inequitable).[1] We therefore reverse the juvenile court's amended judgment, and we remand the cause for the juvenile court to hold a hearing on the mother's postjudgment motion. The father's request for an attorney's fee on appeal is denied.

REVERSED AND REMANDED WITH INSTRUCTIONS.

All the judges concur.

---

[1]Having decided that the juvenile court erred by failing to hold a hearing on the mother's postjudgment motion, we do not reach the mother's other arguments on appeal.